EULENE PRUETT v. WILLARD PRUETT.
—291 S. W. (2d) 278.

Western Section. April 25, 1956.

Petition for Certiorari denied by Supreme Court, June 8, 1956.

C. W. Miles, III, Union City, for appellant.

No appearance for appellee.

BEJACH, J. As this cause is presented to the Court of Appeals for disposition here, it stands in the nature of an ex parte proceeding. The appeal is by complainant, Eulene Pruett (now Mrs. Paul Rumley), from an order or decree of the Circuit Court of Obion County requiring

that the sum of $240 paid into court by defendant, Willard Pruett,—less $50 awarded out of same as attorney's fee for complainant's attorney,—together with future weekly payments of $15 per week for support of the minor child of said parties, ordered to be paid by defendant, Willard Pruett, to the Circuit Court Clerk of Obion County to ''be held by said Clerk for the use and benefit of said child, but not to be paid out to respondent, Eulene Pruett, except by order of the Court; and when it is shown to the Court that it is necessary for the use and benefit of said child.''

The cause originated as a suit for divorce filed December 21, 1953 by Eulene Pruett against Willard Pruett. Personal service was had on the defendant, who allowed a judgment pro confesso to be taken against him and made no appearance at the trial of the divorce action. On the 8th day of January, 1954, a decree was entered which granted to complainant, Eulene Pruett, an absolute divorce and awarded to her exclusive custody and control of the minor child, Willard Thomas Pruett, at that time five years old, with the right reserved to the defendant, Willard Pruett, of visiting and seeing said child on all proper and reasonable occasions. The decree provides further, ''that the defendant, Willard Pruett, will pay into the hands of the clerk of this Court the sum of $15.00 per week beginning Monday, January 11, 1954, and a like sum on each and every week thereafter until further orders of this Court.'' The cause was retained in court, ''for all such further orders that the court may deem proper and necessary for the welfare of said child.''

On September 10, 1955, defendant, Willard Pruett, filed a petition in the cause which refers to the granting of the divorce, January 8, 1954; and to the provision of the

divorce decree providing that petitioner be required to pay the sum of $15 per week into the hands of the clerk for maintenance and support for the complainant and their child. The petition alleges that the complainant (Eulene Pruett) married about a year prior to the filing of said petition, and is now living with her husband in Union City. The petition contains the following language:

"Your petitioner avers and states that since complainant's marriage, he feels that it is not proper or justice for him to pay said amount of $15.00 per week, that it should at least be reduced to $30.00 per month, and that this monthly payment should be held in trust for the use and benefit of the child in schooling in the future."

The petitioner offers, also, to clothe the child and carry hospital insurance for its benefit. The petition alleges that petitioner is in arears for four months which it says was unintentional. The petition prays, "that at the hearing of this petition, your petitioner be granted the relief sought, that is, that the amount of payments be reduced from $60.00 per month to $30.00 per month, that the amount in arrears be paid in monthly installments of $20.00 per month until paid." Said petition also prays, "that petitioner have such further and general relief to which he may be entitled."

Notice of the filing of the petition was served on complainant, Eulene Pruett; whereupon she entered her appearance, and through her attorney, filed a motion to dismiss the petition, "for the reason that the petition shows on its face that he is in contempt of court and is $240.00 behind in his weekly payments awarded by

the honorable court, and that the petition shows that the petitioner is in contempt of court, and petitioner cannot be heard on this matter until and unless he purges himself of contempt'',—which motion was filed September 14, 1955.

■ Thereafter, the defendant and petitioner, Willard Pruett, paid into court the sum of $240, which is the sum referred to above, and moved the court to amend his petition, filed September 10, 1955, by striking therefrom the paragraphs referring to his having been in arrears, and alleging instead that petitioner is not in arrears in his alimony payments. This motion was granted and the petition amended accordingly. That eliminated any question as to the right of petitioner to be heard while he was in arrears; but, even if this payment had not been made, it would have been proper for the judge, in the exercise of his discretion, to have heard and disposed of the petition. Gossett v. Gossett, 34 Tenn. App. 654, 661, 241 S. W. (2d) 934. Simultaneously with the filing of her motion to dismiss on September 14, 1955, complainant had filed a petition in which she prayed that an attachment issue for the body of defendant ''requiring him to appear on Saturday, September 17, 1955 at 10:00 A. M. o'clock, to show cause why he should not be committed or fined for contempt.''

On October 15, 1955, with the pleadings in this situation, the matter was heard on oral evidence before the Hon. E. A. Morris, Circuit Judge. The bill of exceptions recites that the hearing was, ''upon the petition of the defendant, Willard Pruett, for a reduction of alimony payments, the amendment thereto, and upon the motion and answer of the complainant, Eulene Pruett, the petitioner, Willard Pruett, having purged himself of con-

tempt by paying the sum of $240.00 into the hands of Dan W. McKinnis, Circuit Court Clerk of Obion County, Tennessee, on the 15th day of September, 1955.'' The proof established that Willard Pruett is employed, that his ''take home'' pay is $54 to $55 per week, that he has not remarried, that he lives with his sister, Mrs. Annie Lee Pruett Shepherd, and that they, together, support their mother. Mrs. Shepherd testified that she has a little boy the same age as the child of Eulene and Willard Pruett, for the support of whom she receives $5.70 per week from her former husband. She testified that her little boy and the little boy of Eulene and Willard Pruett love each other and that she would be willing to look after and take care of this child and raise it along with her own child. She said, ''They love each other.''

Eulene Pruett testified that she is forty years old and lives with her present husband, Paul Rumley. She said that she is employed as a waitress and earns $23 per week, that her husband had been earning $35 per week, but that at the time of the trial he was out of employment although he expected to go back to work shortly. She said that prior to her marriage to Willard Pruett she had been married to a man named Farris Starnes by whom she had three children, one of whom is grown and that the other two, boys, respectively, 14 and 11, are living with her and her present husband, Paul Rumley, along with Willard Thomas Pruett, the child by Willard Pruett; and that, in addition, a child of Paul Rumley, her present husband, by his first marriage, was also living with them. She said she receives the sum of $10 per week from Starnes for the support of his two children. In addition to the $10 per week from Starnes, she said he furnished everything his two boys have worn, and

▮▮▮▮▮▮▮▮▮▮

that he gave her a charge account at Al Nasoud's. She said that in addition to herself and her husband, Paul Rumley, the family consists of four children,—one little girl, the child of Rumley by a former marriage, her two boys by Starnes, and the one boy by Willard Pruett.

This complicated family situation, as it influenced or induced the action of the trial court which is appealed from, is made clear by an extensive colloquy between appellant, her counsel, and the Court, which we quote:

"Court: Now, he only has one child of his own, and it wouldn't seem right that two of these children are being paid for by their father, and he is relieved of that obligation. Now you have a young child, you and your husband are separated, and this little child has got to live with a step father and has got to live with two other children by your former husband, and so he has to share what little he has left with three others, all of them in different sets. He has to share what little he gets from his father, he doesn't have a father, with them. All this little boy can get out of this marriage is what little money he can have until he gets big enough to go to school. I think a mother's love is worth quite a bit, don't you. I wouldn't hesitate to agree with you if you only had this one child and was trying to make a living and it would have its mother's love, but is a third set of children, and all it has is mother love and no father. Now would you be willing as a mother to ask this court to take this money and order it paid to you, that should go for its education, and spend it? A. I wouldn't take and spend it. It would be used for the child.

"Court: Of course that is the way you feel. What do you think this little child would get out of life when it is ready to go to school? What education would you give him? A. I really couldn't answer that, I don't know Judge.

"Court: You would probably live it up, with other children, so it wouldn't get anything from its father at all. A. Well, I have my mother over here. I would like for you to ask her a few questions about how I was supported.

"C. W. Miles III: She has wanted to go into his own support of her.

"Court: That has no relation to this.

"C. W. Miles III: After their marriage he wouldn't support her—he wouldn't support her while they were living together.

"Court: I am assuming he didn't, but that still doesn't change the situation of the little child, it has been cheated from birth. It certainly has. Do you want to keep robbing it?

"Witness: All I want is to try to raise it right.

"Court: You and your husband are making, or capable of making nearly $300.00 a month, and really and truly what this father is paying in I actually think ought to accumulate for this child.

"C. W. Miles III: All of it, your Honor?

"Court: Yes, I think so, really and truly I can't see any reason for taking this money away from this child and spending it when you and the man you married are supposed to look after it. The two little

children of your former husband are not being treated right, some of that money ought to be put away. If you were by yourself and didn't have help and needed this money I could go along. My conscience would hurt me to order this money to be used to buy beer and throw away, he has no hope unless his father helps him. I think the mother ought to love him well enough to want that. I think that probably you ought to have some help in that petition, but not to the extent you request of the fund. The reason I say that is because Mr. Pruett got behind and the petition had to be filed to make him pay up in this case, which is an accumulation. I can see how you could need a little help to get out of this, but as long as you and Mr. Rumley are making that much money, this money ought to be saved. I can't see where this money ought to be taken and spent. That little child is only eight years old, and it is supposed to be supported by and Mr. Rumley both, I don't know what has happened to this family. I am going to have to deny this request. So far as Mr. Pruett is concerned, there is nothing to keep Mr. Pruett from paying this $15.00 a week. I don't think he ought to even want to take that money away from his child. I think his sister has been terribly abused by her husband and he ought to be required to pay her $15.00 a week, that probably ought to be accumulated for that child. These little children have no hope on earth unless the court gives it to them. I wouldn't drink two bottles of beer in a lifetime, I am getting along without it. I don't see why any mother who has children would ever go off to a beer joint and drink beer.

"Witness: I haven't been to a beer tavern to drink beer since I separated.

"Court: You ought not to drink at all.

"Witness: I realize that.

"Court: I am not saying this to be unkind, but I do want you to realize that the life of your little son is worth a lot more than the habit of drinking beer. I am going to deny this petition of Mr. Pruett's and require him to pay $15.00 a week. I am going to allow a sum to pay Mr. Miles for filing this petition in order to bring this suit up to date. This was occasioned when Mr. Pruett did not keep his payments up, but the rest of that money I am going to order the clerk to hold for further orders of the court and to accumulate for this child.

"C. W. Miles III: I am going to except to that. You are making him continue to make the $15.00 weekly payments and she is having to support that child. I except to your Honor's ruling and will take it up to the Court of Appeals.

"Court: I wish you would take it up, I'd like to know whether I am right or not.

"C. W. Miles III: I intend to do so.

"Court: I will make it that way. If I am wrong, they will correct the order.

"Court: I mean out of this. She and her husband are making $232.00 a month.

"C. W. Miles III: He is out of work.

"Court: He can get another job.

"C. W. Miles III: Well, aren't both of them obligated to support the child?

"Court:

"C. W. Miles III: And it's laying up in court when there's no authority for it.

"Court: I think there is. It's for the child.

"C. W. Miles III: The child is not getting it.

"Court: Yes, sir.

"C. W. Miles III: It's not putting food into his mouth.

"Court: It will give him an education. If it gets to the point where it is needed, it will come.

"C. W. Miles III: I don't know what will happen to the child.

"Court: If she doesn't want the child, I can take it and give it to somebody else.

"C. W. Miles III: She doesn't want that.

"Court: If she is not satisfied about supporting her own child—

"C. W. Miles III: She just wants him to help.

"Court: He is helping.

"C. W. Miles III: She is not getting it.

"Court: The child is getting it, and more, because he is getting her contribution, the father to educate him and her to support him. If it gets to the point where he has to have food, I would be glad to order

it. Why should I give it to them when they are making nearly $300.00 a month and they are drinking beer?

"C. W. Miles III: The point I am making is that she is getting absolutely no help.

"Court: Well, she has a husband, and herself.

"C. W. Miles III: He is paying $15.00 a week, and it sits up in Court and he gets none of it.

"The Court: It will give him an education.

C. W. Miles: I respectfully except to your Honor's ruling and I want sixty days in which to prepare a bill of exceptions.

"Court: All right. I would be glad to know about this. I have authority which gives me the right to look after the interest of this child. I think I have a right to hold it out for his education.

"Witness: We will make out, we always have.

"Court: I don't know if you want this child.

"Witness: I most assuredly do and I'd work my fingers to the bone to keep him.

"Court: I think I will hear some proof on her taking this child.

"C. W. Miles III: They have not requested it and I except to that.

"Court: I'll overrule the exception. I want to get it all straightened out.

"C. W. Miles: We accept.

"Court: Note the exceptions.

"C. W. Miles III: Your Honor has heard enough proof to know the man has forfeited his right to this child.

"Court: I don't think they ought to hold it over my head because I want to find out.

"C. W. Miles III: I'd like to recall Mrs. Pruett.

"Re Re Direct Examination:

"Q. Do you want this child? A. Without a doubt, I want my child.

"Q. Do you think your husband is fit to have this child? A. I do not. I am trying to raise him right.

"Q. Do you want this child regardless of whether you get the money or not? A. I sure do.

"Q. Are you willing, if you don't get a dime, to keep this child and raise him? A. That's exactly right.

"Q. Will you support him? A. I certainly will.

"Q. Are you willing to support him and when you need help, to call on the court? A. Yes.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

"Court: I am satisfied for you to have this child when you said you wanted it. I thought if you were not satisfied with the child, I would take it away from you.

"Witness: I am trying to live right and I am trying to raise him right.

"Court: I just want to do the right thing, I wouldn't want you to waste this money when you acknowledge you and your husband were making nearly——a month, and you were drinking beer.

"Witness: An occasional beer, your Honor.

"Court: When you get to the point you need help, and I see that it is honest, I will be glad to give an order to help take care of the child, but until then I want the money to accumulate for the real benefit of the child, for its education."

A final decree was entered September 17, 1955, from which decree the present appeal was taken. Said decree recites the payment of $240 by Willard Pruett and the disallowance of the motion to dismiss his petition. It recites that Willard Pruett is making $55 to $56 a week, which sum he was making at the time of the original divorce decree,—which decree awarded $15 a week for support and maintenance of the minor child of the parties, and that his condition has not materially changed since, and consequently that weekly payments of $15 per week should not be reduced. It orders petitioner, Willard Pruett, to continue to make his $15 weekly payments to Dan W. McKinnis, Circuit Court Clerk. The decree recites and finds as a fact that "Eulene Pruett, has two children by her first husband and is receiving the sum of $10.00 a week from him, plus clothing, for the support and maintenance of said two children, and that about a year ago she married one Paul Rumley and the said Paul Rumley has a child of his own, and that the respondent, Eulene Pruett, is of course keeping and has the custody of Willard Thomas Pruett, minor child of the parties to this proceeding, so that four children are

now residing with her, two by her first husband, one by the petitioner, Willard Pruett, and a step child of her present husband, Paul Rumley.''

The decree provides further: ''And it further appearing to the Court that the respondent, Eulene Pruett, is employed, making the sum of $23.00 a week, and while her husband, Paul Rumley, has been unemployed for some two days prior to the trial of this cause, that he is capable of making the sum and has been making the sum of $35.00 a week, making a total of $58.00 which the said Eulene Pruett and her husband are capable of making and have been making until very recently, in addition to which the respondent is receiving $10.00 a week from her first husband; it further appearing to the court that the respondent, Eulene Pruett, frequently visited places where beer is principally sold and drank beer frequently, it is therefore, ordered, adjudged and decreed by the court that it is not necessary, at this time except $50.00 to Mr. Miles as attorney for petitioner which is ordered paid by the Court of the $240.00 paid into court by petitioner, Willard Pruett, to be paid into the hands of Euline Pruett for the use and benefit of Willard Thomas Pruett, minor child of the parties, and it is ordered that for the present said sum of $240.00 be retained by Dan W. McKinnis, Circuit Court Clerk, subject to future orders of the court, and not to be paid to the respondent, Eulene Pruett, except upon order of the court, to which action of the Court the respondent, Eulene Pruett, duly excepted.

\* \* \* \* \* \* \*

"It is the order of this court that neither the $240.00 heretofore paid in to court nor the $15.00 weekly payments shall be paid to the respondent, Eulene Pruett, but shall be retained by Dan W. McKinnis, Circuit Court Clerk, subject to future orders of the Court and to be paid out when it is shown to the Court to be for the use and benefit of the minor child of the parties, to which action of the Court the original complainant and respondent, Eulene Pruett, duly excepted and prayed an appeal to the next term of the Court of Appeals, at Jackson, which appeal is by the Court granted upon respondent executing the proper cost bond in the sum of $250.00, or taking the pauper's oath in lieu thereof."

A pauper's oath was duly filed by appellant and the cause was brought to this Court, on her appeal.

Appellant's brief in this cause contains a heading:

"Questions Involved". "There are only two questions involved in this case"

These questions are:

"1st. Where there is a decree of the Circuit Court of Obion County awarding the sum of $15.00 a week to be paid to the Circuit Court Clerk for the support of a minor child of the parties, and where the father has become delinquent in the sum of $240.00, during which time the mother has had the sole support and custody of said child, and where the father pays the delinquent amount of $240.00 into the hands of the Circuit Court Clerk, does the Circuit Judge have the authority to withhold the entire amount representing these payments from the mother?

"2nd. Under the same decree, can the Circuit Judge order future weekly payments of $15.00 withheld from the mother where the mother has the custody of the child and is supporting it?"

 We agree with appellant's counsel that the assignments of error filed in this Court raise only these two questions. These two questions really resolve themselves into one,—the only difference between the two being that the first deals with the authority of the trial judge as to the fund already in court, and the second with the authority of the judge as to future weekly payments required to be made. We can see no difference in the authority of the judge with reference to these two situations. If he has authority to withhold the one, he has equally as much authority for withholding the other.

Before answering this question, however, we wish to consider the situation presented by the judge's denial of the petition to reduce the weekly payments required to be made by Willard Pruett.

 The divorce decree entered January 8, 1954, required the payment of $15 per week, without specifying whether same should be as alimony or for child support or for both. In view of the fact that the same decree granted a divorce to Eulene Pruett and granted custody of the child to her, it seems obvious that this $15 per week must be considered as including both alimony for the divorced wife and support for the child whose custody was awarded to her. Certainly, that was the view taken by Willard Pruett, himself, because in his petition for reduction filed September 10, 1955, he says, "and petitioner was required to pay the sum of $15.00 per week into the hands of the Clerk for maintenance and support

for the complainant and their child." Also, that was the very basis of his application for reduction. The petition further recites, "Your petitioner avers and states that since complainant's marriage, he feels that it is not proper or justice for him to pay said amount of $15.00 per week." We agree with him and think it would be obviously unjust for him to be required to continue to provide for the support of his former wife after her remarriage to Paul Rumley. Even if the $15 per week be treated, as the trial judge has treated it, as being exclusively for the support of the child, the situation is still inequitable, from the point of view of Willard Pruett. The record shows that Eulene Pruett is receiving $10 per week from her first husband, Farris Starnes, for the support of his two children. Certainly if $10 per week is the proper amount for two children, $15 per week for one child is unreasonable. It is true that Starnes' income is shown to be only $35 per week as compared to Willard Pruett's income of $55 per week, but even so, the amount required to be paid by Willard Pruett is out of proportion. What makes the situation especially unfair is the fact (of which fact this Court can take judicial notice) that if the $15 per week should be paid to Eulene Pruett Rumley, it along with the $10 per week from her first husband, Starnes, together with her own earnings and perhaps that of her present husband, would all go for general support of the family. Probably the trial judge realized that such would be the case and, recognizing same, undertook to correct the inequity of it by impounding the payments made by Willard Pruett for the education of Willard Thomas Pruett, thus providing that the payments made for his benefit by his father, Willard Pruett, would in fact insure to his individual benefit and

to the exclusion of his half brothers and step sister. Be that as it may, since Willard Pruett did not appeal from the decree, there is nothing this Court can do about the matter, so far as concerns reducing the payments which he is required to make.

■ On the other hand, we find no good reason, either because of the law applicable or because of the equities of the case, to alter the situation provided for in the judge's decree. The pleadings presented in the record of this cause amply justify the decree which was entered. Willard Pruett's petition contains language which specifically covers the situation, to wit:

"Your petitioner avers and states that since complainant's marriage, he feels that it is not proper or justice for him to pay said amount of $15.00 per week, that it should be reduced at least to $30.00 per month, and that this monthly payment should be held in trust for the use and benefit of the child in schooling in the future."

The disposition of the matter made by the decree which has been appealed from, may be properly regarded as partial granting of Willard Pruett's petition.

The cardinal rule which controls our action in the premises is set out in the language used by Mr. Justice Lansden in the case of Graham v. Graham, 140 Tenn. 328, 332, 204 S. W. 987, 988, as follows:

"In this case the custody of the two daughters has been awarded to the mother by order of the court. This order is not called in question by the father, and therefore there can be no adjudication in this case to the contrary. The cardinal inquiry in all such

cases is: What is the best interest of the infant children? they are in no wise responsible for the marriage or divorce of these people, and they cannot be connected in any responsible manner with the financial misfortunes of the mother. * * * His duty to furnish them the necessities of life is a natural one, which it is impossible to understand how a father, who loves his children, would seek to evade. It is also a duty imposed upon him by the law of the land, which he cannot evade.''

In this same case, the Supreme Court speaking through Mr. Justice Lansden, said further:

''The contribution required of defendant is not for her benefit, but is for the benefit of the children. For this reason the action of the Court of Civil Appeals in directing him to pay the money into the hands of the clerk of the circuit court, to be applied by him to the support and maintenance of the daughters, was proper. This is a guarantee by the court that the contribution exacted from defendant will be applied to the ends and purposes for which they are collected. It is not proper that petitioner should have the right to receive or expend this money, because she has no rights against the defendant.'' Graham v. Graham, 140 Tenn. 328, 335, 204 S. W. 987.

To the same effect is Dews v. Dews, 6 Tenn. Civ. App. 154, 161-162, in which case, Mr. Justice Moore, speaking for the Court of Civil Appeals, said:

''We have reached the conclusion that this defendant, during the next twelve months, beginning from the date when this cause reaches the Circuit Court of Davidson County, shall pay, at the end of each month,

294

the sum of $25.00, to be used in supporting, maintaining and educating his boy. This money he will pay to the Clerk of the Circuit Court of Davidson County to be by the Clerk paid to a regular guardian of Lawrence Dews, and then to be used by said guardian in the support, maintenance and education of his son. If she fails to have such guardian appointed, then the Clerk will expend said fund, under the suggestions of complainant, in the support and maintenance of this boy."

■ The cases from which the passages quoted above are taken, constitute sufficient authority for holding that funds exacted from Willard Pruett for the support of his child may be required to be paid to the Circuit Court Clerk and by him expended for the benefit of such child. If the Judge of the Circuit Court can delegate such authority to the Clerk, he may, himself, assume such authority or direct the Clerk to perform under his personal supervision. Demoville v. Davidson County, 87 Tenn. 214, 10 S. W. 353; Luehrman v. Taxing District, 70 Tenn. 425. Obviously, if in any particular situation the judge should act arbitrarily or unreasonably in withholding funds or in directing the use of same, his action upon proper pleading, as in any other case of abuse of discretion, can be reviewed on appeal.

Under the provisions of Code Section 8463, sec. 34-101, Tenn. Code Ann., Willard Pruett and Eulene Pruett Rumley are jointly charged with the care, nurture, welfare, education, and support of Willard Thomas Pruett. This Code Section has been construed to require equitable division or apportionment of the expenses involved in the support, maintenance and education of children where the financial situation of the parents differs. Rose Fu-

neral Home Inc., v. Julian, 176 Tenn. 534, 144 S. W. (2d) 755, 131 A. L. R. 858; Merrill v. Merrill, 188 Tenn. 10, 216 S. W. (2d) 705, 7 A. L. R. (2d) 488; Baker v. Baker; 169 Tenn. 589, 89 S. W. (2d) 763. Evidently the trial judge thought, in the instant case, that the arrangement which his order requires, made a proper apportionment according to the equities between the parties to this cause. We find no reason disclosed by the record to disturb that arrangement. The cause is, accordingly, affirmed and remanded to the Circuit Court of Obion County.

The costs of the cause will be paid by appellant, Eulene Pruett Rumley.

Avery, P. J. (Western Section), and Carney, J., concur.