Barbara Ann **GORRIE**, Karen Comnick, Linda Schneider, Robert Schneider, On Behalf of Themselves and Their Minor Children, Plaintiffs,

v.

Margaret M. **HECKLER**, Secretary, United States Department of Health and Human Services, and Leonard W. Levine, Commissioner, Minnesota Department of Human Services, Defendants.

Civ. No. 4–84–1203.

United States District Court,
D. Minnesota,
Fourth Division.

April 1, 1985.

Southern Minnesota Regional Legal Services by Martha A. Eaves, Thomas G. Squire, and Michael Hagedorn, St. Paul, Mn., for plaintiffs.

James M. Rosenbaum, U.S. Atty. by Carol B. Swanson, Asst. U.S. Atty., Minneapolis, Mn., for defendant Margaret M. Heckler, Secretary of the U.S. Dept. of Health and Human Services.

Hubert H. Humphrey III, Minnesota State Atty. Gen. by Vicki Sleeper, Sp. Asst. Atty. Gen., St. Paul, Mn., for defendant Leonard Levine, Commissioner of the Minn. Dept. of Human Services.

## ORDER

MILES W. LORD, Chief Judge.

At issue in this case is the validity of the Secretary of Health and Human Service's (hereinafter "Secretary") rule, 45 C.F.R. § 206.10(a)(1)(vii) (hereinafter "New Rule"), interpreting 42 U.S.C. § 602(a)(38) (1984) (hereinafter "Paragraph 38").

■ Plaintiffs consist of families receiving or applying for Aid to Families with Dependent Children (hereinafter "AFDC") who have residing with them both dependent children and other children (either blood-related or adoptive) who receive independent child support payments from non-custodial parents. Plaintiffs petition this court for class certification pursuant to F.R.Civ.P. 23(a). This court certifies plaintiffs as a class because their class is so numerous, plaintiffs estimate 1200 families in Minnesota, that joinder of all members is impracticable, *Vernon J. Rockler v. Graphic Enterprises, Inc.,* 52 F.R.D. 335 (D.Minn.1971) (see F.R.Civ.P. 23(a)(1)), because essentially the same questions of fact or law affect all members of the class and arise out of the same contested occurrence, e.g. the enforcement of the New Rule, *Mosley v. General Motor Corporation,* 497 F.2d 1330, 1333 (8th Cir.1974) (see F.R.Civ.P. 23(a)(2)), because the plaintiffs' claims are typical of those of the class members, *Donaldson v. Pillsbury Company,* 554 F.2d 825, 830 (8th Cir.1977) (see F.R.Civ.P. 23(a)(3)), and because the representative plaintiffs possess interests in common with the rest of the class and are represented by competent counsel, *Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 247 (3rd Cir.1975) (see F.R.Civ.P. 23(a)(4)).

■ A further preliminary procedural detail involves the motion by the defendant Commissioner of the Minnesota Department of Human Services (hereinafter "Commissioner") seeking to join as a third party plaintiff against the Secretary. The Secretary opposes this motion alleging that the Commissioner has no standing to sue because he has suffered no injury in fact. *Sierra Club v. Morton,* 405 U.S. 727, 734–735, 92 S.Ct. 1361, 1366, 31 L.Ed.2d 636 (1972). However, the purpose of the standing requirement is to ensure that a dispute is presented in a concrete adversarial context capable of judicial resolution. *Association of Data Processing Services Org., Inc. v. Camp,* 397 U.S. 150, 152, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970). Here, the Commissioner is attempting to join with recognizable parties in a case clearly in controversy, *Buckley v. Valeo,* 424 U.S. 1, 12, 96 S.Ct. 612, 631, 46 L.Ed.2d 659 (1976), because the effect of the New Rule will

allegedly work to undermine his responsibilities for regulating and administering his state's child welfare program. *Washington Utilities & Transp. Com'n v. F.C.C.*, 513 F.2d 1142, 1149 (9th Cir.1975). While these conditions alone satisfy the requirements of standing, the Commissioner is also injured in fact to the extent that he incurs an added cost in administrating the New Rule.[1] Because of both the expanding notion of standing and the Commissioner's injuries in fact, this court allows the Commissioner to join as a third party plaintiff.[2]

Interpretation of Paragraph 38 and its attendant New Rule begins with a recitation of the AFDC program's fundamental purpose of providing financial assistance to needy children who are not adequately protected by state-imposed child support laws. *King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). Against that background, Congress passed Paragraph 38 as part of the Deficit Reduction Act of 1984 (Pub.L. 98–369), to "end the present practice whereby families exclude members with income in order to maximize family benefits, and [to] ensure that the income of family members who live together and share expenses is recognized and counted as available to the family as a whole." S.Rep. No. 300, 98th Cong., 2d Sess. 165 (1983). These two goals are not mutually exclusive; rather, the AFDC's overall purpose subsumes Paragraph 38 and requires that the two be read in harmony with one another. *Turner v. Prod*, 707 F.2d 1109, 1121 (9th Cir.1983).

■ Paragraph 38 requires an application for AFDC benefits made on behalf of a dependent child to include (1) the income "available for" siblings living in the same household as the dependent child, if (2) those siblings are themselves "dependent children." *See* 42 U.S.C. § 602(a)(7); 42 U.S.C. § 606(a)(1)&(2). Applying Paragraph 38's first requirement of "availability of income" to the present issue of child support payments in turn involves a two-step process of determining, first, whether child support payments are actually available to that designated child; and second, whether, if available to that child, those funds are also actually available for the family at large. Courts require a showing *in fact* that funds are available to the designee, *Owens v. Heckler*, 753 F.2d 675 (8th Cir.1985); *Morrison v. Heckler*, 602 F.Supp. 1485 (D.Minn.1985), and that those funds are in turn available to the rest of the family. *See e.g., Gilliard v. Craig*, 331 F.Supp. 587 (W.D.N.C.1971) *aff'd without opinion*, 409 U.S. 807, 93 S.Ct. 39, 34 L.Ed.2d 66 (1972); *cf. Shonkwiler et al. v. Margaret M. Heckler*, IP 84–1612–C (S.D. Ind. Jan. 31, 1985). The Secretary argues that in passing Paragraph 38, Congress intended to create a legislative presumption of availability of income as to the individual and as to the family "in recognition of the fact that family members who live together most likely share expenses." *Federal Defendant's Memorandum of Points and Authorities* at 17. However, the legislative history of Paragraph 38 quoted by the Secretary to support her presumption of availability speaks of recognizing and counting as available to the family as a whole, "the income of family members who live together *and share expenses.*" R.Rep. No. 300, *supra*, at 165. (emphasis added). Whether family members "share expenses" is inherently a factual matter and thus convinces this court that Congress meant, in passing Paragraph 38, to stop the previous practice whereby families who shared living expenses *in fact* could *elect* to avoid having their cumulative income counted for AFDC purposes. Such an interpretation of

---

**1.** The affidavits of the custodial parent plaintiffs express the fear that the New Rule will encourage non-custodial parents to cease payment of child support altogether, thus adding significantly to the administrative cost of the AFDC program and reducing the amount of monies left available for qualified applicants.

**2.** As a third party plaintiff, the Commissioner would challenge the Secretary's New Rule as violating the tenth amendment because of its alleged infringement on the state right to regulate its own financial matters. This court does not address this issue because resolution of this case is possible without doing so.

Paragraph 38 preserves both the AFDC program's purpose of providing for needy children and Paragraph 38's purpose of saving money by stopping the previous practice of allowing the family to apply for AFDC benefits on behalf of children of its choosing. *Noot v. Heckler*, 718 F.2d 852, 862 (8th Cir.1983).

■ The Secretary's New Rule avoids Paragraph 38's required factual showing that funds available to one sibling are available to the entire family by sidestepping Paragraph 38's second requirement, "dependency." *See* 42 U.S.C. § 606(a)(1) & (2). The Secretary interprets § 606(a)(1) & (2) as meaning that "[i]f any of these conditions [death, absence of parent, incapacity] is present, a minor child is considered deprived and therefore dependent and eligible for AFDC assistance." *Federal Defendant's Memorandum of Points and Authorities* at p. 22. By focusing on the status of the parent of the child as conclusively evidencing the child's dependency, the Secretary creates a presumption of eligibility to which she adds the requirement that "[u]nder the new statute, parents and siblings must be included in the assistance unit, unless they are ineligible to receive AFDC under another provision of the Act." 49 Fed.Reg. 176 p. 35589. This combined presumption of eligibility and required inclusion of eligible family members in the family's application for AFDC benefits subsequently enables the Secretary to use 42 U.S.C. § 602(a)(26)(A)'s requirement that AFDC applicants assign income available to them to the state. In this way the Secretary completes her circuitous avoidance of showing whether funds available to one sibling are in fact available to the rest of the family by making them expressly available through her use of 42 U.S.C. § 602(a)(26)(A)'s assignment requirement. However, in so doing, the Secretary's presumption of eligibility ignores her own regulation requiring that both actual need and deprivation of parental support or care be present to qualify for AFDC benefits. *See* 45 C.F.R. § 233.90(c)(1)(i). Because Paragraph 38 incorporates § 606(a)(1) & (2), and the Deficit Reduction Act left § 606(a)(1) & (2) unchanged, this court rejects the New Rule's presumption of eligibility and requires instead that Paragraph 38's element of dependency comply with § 606(a)(1) & (2)'s traditional showing that applicants for AFDC benefits are in fact (1) needy and (2) deprived of parental support or care.

■ Left to stand, the New Rule would require co-habitating blood related or adoptive siblings who receive independent child support from their non-custodial parents to choose between (a) moving out of their family home, so that the rest of their family may remain eligible for AFDC benefits, (b) remaining in their family's home, refusing to apply for AFDC benefits, and thereby making their dependent siblings ineligible for benefits, or (c) staying in their family home, applying for AFDC benefits and thereupon being subject to § 602(a)(26)(A)'s required assignment of their child support to the state.[3]

All three alternatives violate the AFDC program's dual purposes of providing for needy children and preserving the family unit. *See* 42 U.S.C. § 601. The first alternative facially violates the AFDC program's second purpose by effecting a separation of the family unit while the second alternative violates the AFDC program's first purpose by depriving actually dependent children of needed state aid. The third alternative, and the one most likely to result from the New Rule, is void for two reasons.

First, by requiring independently supported children to assign their child support payments to the state in order that the rest of the family unit may remain eligible for AFDC benefits, the independently supported child itself is deprived of monies determined by state courts to be necessary

---

**3.** Viewed from the perspective of the plaintiffs as parents results in an equally untenable result of the New Rule would place the custodial parent in the position of either improperly assigning to the state the non-dependent childrens' support payments intended for the benefit of the designated child or forfeiting AFDC for the "dependent" children.

for his or her particular needs. State courts establish the amount of child support payments paid to independently supported children by balancing the specific needs of the individual child, such as special medical care, against the parent's ability to pay. *See e.g.* Minn.Stat. § 518.17. Thus, the New Rule deprives independently supported children of their state determined needs to the extent that their non-custodial parental support payments exceed what they would receive as one more unit in their family's AFDC filing unit. Suffice it to say that such a result stands on its head the AFDC program's purpose of providing needed care for dependent children and makes meaningless the decrees of the state courts determining the amount of child care aid. *Heckler v. Campbell,* 461 U.S. 458, 466, 103 S.Ct. 1952, 1957, 76 L.Ed.2d 66 (1983).

■ Second, besides being void for facially violating the purpose of the Social Security Act's AFDC program, the Secretary's New Rule also abridges the constitutionally recognizable property rights of these independently supported children without due process of law. The property interest at stake is the state created contract right to receive non-custodial child support payments. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709 33 L.Ed.2d 548 (1972); *Perry v. Sinderman,* 408 U.S. 593, 598, 601, 92 S.Ct. 2694, 2698, 2699, 33 L.Ed.2d 570 (1972). The Secretary argues that she is not depriving these plaintiffs of their child support payments because they can avoid their loss by not applying for AFDC benefits. While that may be true in the abstract, "procedural due process rules are shaped by the risk of error inherent ... in the generality of cases, not the rare exceptions." *Mathews v. Eldridge,* 424 U.S. 319, 344, 96 S.Ct. 893, 907, 47 L.Ed.2d 18 (1976). Where, as here, minor children are faced with choosing between moving away from home, depriving their siblings of support, or, against their best interests, assigning their support payments to the state, they will "in the generality of cases" choose the last. Such a predictable result constitutes

a sufficient taking of a recognizable property interest for this court to strike it down as violative of the Constitution unless the Secretary satisfies this court that such a taking comports with the necessary degree of due process.

■ While determining when and how much process is due involves considering the government and private interests at stake, *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), the requisite procedures must be tailored to the capacities and circumstances of those who are to be heard. *Goldberg v. Kelley,* 397 U.S. 254, 268–269, 90 S.Ct. 1011, 1020–1021, 25 L.Ed.2d 287 (1970). In this case, the "brutal need" of child support receipts to the plaintiffs, *id.* at 261, 90 S.Ct. at 1016, combined with their limited capacity, as minors, to be heard is weighed against the risk of serious error posed by the Secretary's presumptions of availability of income and dependency, factors traditionally requiring factual substantiations, and the government's financial interest in reducing welfare costs, a factor which is not a controlling weight in determining whether due process requires a particular procedural safeguard prior to some administrative decision. *Mathews v. Eldridge,* 424 U.S. at 348, 96 S.Ct. at 909. Concluding that the plaintiffs' interests outweigh the government's interests, this court also concludes that the practicable procedural safeguard to protect the plaintiffs' interests is a pre-deprivation hearing to establish that these independently supported children (1) are actually needy (2) are deprived of parental support or care and that their child support receipts (3) are in fact available to them and (4) if available to them are also in fact available to their family to use. *See Goldberg v. Kelley,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). If the Secretary makes those necessary factual showings, then in accordance with this court's interpretation of Paragraph 38, those monies shall be applied in determining a family's eligibility for AFDC benefits.

To ensure the Secretary's and Commissioner's compliance with these procedural prerequisites, this court issues a preliminary injunction, pursuant to F.R.Civ.P. 65(a), directing the defendant Commissioner to issue an instructional bulletin within ten (10) working days of the filing of this order informing the directors of each county welfare agency within the State of Minnesota of the Court's Order herein, and directing those agencies to:

a) Reinstate any class member's AFDC benefits reduced or terminated because of defendant Heckler's regulation and/or Instruction Bulletin # 84–76, Attachment 9; and

b) Notify any class member now receiving AFDC as a result of the defendant's rule of his/her right to be removed from the AFDC grant immediately, and of his/her right to request the return of any child support paid by his/her supporting parent, less the amount of AFDC assistance actually paid for such child to date.

c) Notify all AFDC claimants who are now or in the future will be affected by Paragraph 38 of their right to a predeprivation hearing at which the Secretary must show that the affected independently supported children (1) are actually needy, (2) are deprived of parental support or care and that their child support receipts, (3) are in fact available to them, and (4) if available to them are also available to their family to use; all of which factual findings shall be prerequisites to the Secretary's right of assignment.

This court issues this preliminary injunction (1) because the plaintiffs risk irreparable harm to their family structure through enforcement of the New Rule, (2) because plaintiffs' familial harm outweighs the defendants' loss as the New Rule takes away, rather than denies access to, a recognizable property interest, (3) because the plaintiffs are likely to succeed on the merits of their case, and (4) because public interest in preserving the family structure outweighs the public concern for saving the indeterminate amount of money at issue here. *See e.g. Chu Drua Cha v. Noot,* 696 F.2d 594, 599 (8th Cir.1984) *citing Dataphase Systems, Inc. v. C.L. Systems, Inc.,* 640 F.2d 109 (8th Cir.1981).

IT IS SO ORDERED.