**Barbara Anne GORRIE, Karen Comnick, Linda Schneider, Robert Schneider, on behalf of themselves and their minor children, and other persons similarly situated, Plaintiffs,**

**JoAnne Heille, Rosa Williams, Jean Sonnenberg, and Linda Garza, on behalf of themselves and their minor children, and other persons similarly situated, Intevenor-Plaintiffs,**

v.

**Margaret M. HECKLER, Secretary, United States Department of Health and Human Services, and Leonard W. Levine, Commissioner, Minnesota Department of Human Services, Defendants.**

Civ. No. 4–84–1203.

United States District Court,
D. Minnesota,
Fourth Division.

July 22, 1985.

Permanent Injunction Order
Sept. 10, 1985.

Southern Minnesota Regional Legal Service by Martha A. Eaves, Thomas G. Squire, and Michael Hagedorn, St. Paul, Minn., for plaintiffs.

Law Office of the Legal Aid Society of Minneapolis, Inc. by Richard A. Pavel, Minneapolis, Minn., for intervenor-plaintiffs.

Carol B. Swanson, Asst. U.S. Atty., Minneapolis, Minn., for defendant Margaret M. Heckler, Secretary of the U.S. Dept. of Health and Human Services.

Hubert H. Humphrey III, Minn. State Atty. Gen. by Vicki Sleeper, Sp. Asst. Atty. Gen., St. Paul, Minn., for defendant Leonard Levine, Com'r of the Minnesota Dept. of Human Services.

## ORDER FOR PRELIMINARY INJUNCTION

MILES W. LORD, Senior District Judge.

This matter came before the Court on July 16, 1985 on the motion of intervenor-plaintiffs for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a). Intervenor-plaintiffs were represented by Richard A. Pavel; plaintiffs were represented by Martha A. Eaves; defendant Commissioner was represented by Vicki Sleeper and defendant Secretary was represented by Anne L. Weismann. Based upon the entire record before the Court and after consideration of argument by counsel, the Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. The original plaintiff class consists of families who are receiving or applying for Aid to Families with Dependent Children (hereinafter "AFDC") who have residing with them both dependent children and other children (either blood-related or adoptive) who receive independent child support payments from non-custodial parents.

2. The intervenor-plaintiff class consists of persons who are receiving or applying for AFDC who have residing with them both dependent children and other children (either blood-related or adoptive) who receive Social Security Child's Insurance Benefits pursuant to 42 U.S.C. § 402(d).

3. At issue in this case is the validity of the Secretary of Health and Human Services' (hereinafter "Secretary") interim final rule, 45 C.F.R. § 206.10(a)(1)(vii) (hereinafter "New Rule"), interpreting section 2640(a) of the Deficit Reduction Act of 1984, (hereinafter "DEFRA") Pub.L. No.

98–369, 98 Stat. 494, 1145 (effective October 1, 1984) (codified at 42 U.S.C. § 602(a)(38) and hereinafter referred to as "Paragraph 38"). Paragraph (38) provides that:

[I]n making the determination under paragraph (7) with respect to a dependent child and applying paragraph (8), the State agency shall (except as otherwise provided in this part) include—

(A) any parent of such child, and

(B) any brother or sister of such child, if such brother or sister meets the conditions described in clauses (1) and (2) of section 606(a) of this title [42 U.S.C. § 606(a)], if such parent, brother, or sister is living in the same home as the dependent child, and any income of or available for such parent, brother, or sister shall be included in making such determination and applying such paragraph with respect to the family (notwithstanding section 405(j) of this title [42 U.S.C. § 405(j)], in the case of benefits provided under subchapter II of this chapter); 42 U.S.C. § 602(a)(38).

In its conditional language Paragraph 38 incorporates unchanged 42 U.S.C. § 606(a)(1) and (2) which defines the term "dependent child" as "a needy child (1) who has been deprived of parental support or care by reason of the death, continued absence from the home ... or physical or mental incapacity of a parent" and who is under a specified age (either 18 or 19). 42 U.S.C. § 606(a).

4. The Secretary's New Rule provides that:

For AFDC only, in order for the family to be eligible, an application with respect to a dependent child must also include, if living in the same household and otherwise eligible for assistance:

(A) Any natural or adoptive parent, or stepparent (in the case of States with laws of general applicability); and

(B) Any blood-related or adoptive brother or sister.

49 Fed.Reg. 35599 (Sept. 10, 1984), to be codified at 45 C.F.R. § 206.10(a)(1)(vii).

5. On September 24, 1984, Defendant Commissioner issued an Instructional Bulletin No. 84–76, Attachment 9 which instructed all county welfare agencies in Minnesota that:

Parent, minor siblings and minor half-siblings must all be included as part of the AFDC assistance unit when they reside in the same home. An application must be submitted for all members of the assistance unit. If application is not made for currently excluded parents, minor siblings or minor half-siblings by November 1, 1984, the AFDC case shall be terminated.

6. On April 1, 1985 this Court issued a Preliminary Injunction upon the motion of the original plaintiff class herein; that Order concluded that the Secretary's New Rule facially violated the purpose of the AFDC program, the intent of Paragraph 38, and the due process rights of the original plaintiff class. Said injunction established a pre-deprivation hearing requirement to ensure compliance with due process safeguards.

7. Defendant Commissioner issued an Instructional Bulletin No. 84–76d on April 15, 1985, which was intended to implement the Court's April 1st injunction and which stated in part: *"NOTE: children receiving RSDI [Social Security Child's Insurance Benefits] or other forms of income are not affected by this preliminary injunction."*

8. The defendants have made no factual determination as to whether the intervenor children who receive Social Security meet the condition of Paragraph 38 that these children must in fact be "dependent children" who are "needy" before they come within the scope of Paragraph 38. Instead, the defendant Secretary has focused solely upon whether these children have one parent who is absent, deceased or incapacitated and the New Rule creates an irrebuttable presumption that the status of that parent is conclusive evidence that the Social Security recipient child is a "needy" dependent child who must actually file an

application for AFDC benefits without regard to whether such children either need or desire welfare assistance.

9. The Secretary's New Rule conclusively presumes that the Social Security benefits of plaintiff children are fully available to the AFDC recipient/applicant half-brothers and/or half-sisters without any regard to whether that income is in fact legally available or actually available to those AFDC recipient/applicant children.

10. The Social Security Child's Insurance benefits of the class members vary in amount because they are based upon the earnings history of their deceased, incapacitated or retired wage-earner parents. 42 U.S.C. § 402(d). Even in cases where a plaintiff child receives more than $500 per month in Social Security benefits, the Secretary's new rule still conclusively presumes that such a child is "needy" and "dependent" and therefore that child is required to apply for AFDC benefits or their half-siblings will be terminated from AFDC. (*See*, Affidavits of class members West and Brown).

11. The representative payees who receive the Social Security benefit checks for intervenor-plaintiff children are prohibited by law from using those funds for any purpose whatsoever except "for the use and benefit of" the intended child beneficiary; violation of this prohibition would subject a representative payee to federal criminal sanctions. 42 U.S.C. § 408(e). The Secretary's own regulations also require that these Social Security benefits be used only for the intended child beneficiary. 20 C.F.R. §§ 404.2040, 404.2045.

12. The transfer or assignment of Social Security benefits, including Child's Insurance benefits, is strictly prohibited by statute.

The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

42 U.S.C. § 407(a).

13. In 1983 Congress added a provision to 42 U.S.C. § 407 which strictly prohibits any modification of 42 U.S.C. § 407 by any method whatsoever except when adopted "by express reference to this section." 42 U.S.C. § 407(b). Paragraph 38 contains no express reference to 42 U.S.C. § 407.

14. The intervenor-plaintiff class members are at the economic margin of existence and would suffer severe economic hardship if an injunction is not issued. All of the AFDC recipients in the intervenor class face either substantial reductions or total termination of their AFDC grants if the Secretary's New Rule is enforced as to this class of plaintiffs.

Mary West's AFDC grant of $431 was terminated on July 1, 1985 because of the Secretary's New Rule. The West family now must rely entirely upon the Social Security benefits of one child for their support. In July, 1985 they spent 88% of their total income just to pay for rent.

The application of the New Rule in the case of Virginia Brown creates a loss of $447 per month in AFDC benefits. The one child in the household who receives Social Security benefits has special medical and behavioral problems. However, that child has almost $3000 in past-due medical bills which cannot be paid because under the Secretary's New Rule he is forced to use his Social Security income to support his half-siblings.

Jean Sonnenberg and her family would lose $175 per month in AFDC benefits under the New Rule. Their total income for four persons would be $605 per month. Their cost of rent and utilities in June, 1985, exceeded $500. If the New Rule is applied to their household they will not have sufficient funds left over after paying their rent and utilities to afford other necessities.

Florida McHenry is caretaker for eight minor children and has lost $520 per month in AFDC benefits as a result of the Secre-

tary's New Rule. The household's rent alone is $470 per month which leaves only $495 per month to provide all other necessities other than rent for 9 persons.

Rosa Williams' family would lose $219 per month in AFDC benefits under the New Rule. Under the New Rule the Williams' household would spend 64% of their total income on rent alone.

15. The defendant Commissioner is not opposed to the injunctive relief being requested except for requesting five additional days to implement the relief. The Court concludes that the administrative costs of implementing the requested relief would not be an undue hardship upon the state defendant.

The only harm claimed by defendant Secretary is administrative harm, however, any potential overpayments of AFDC benefits are recoverable later.

## CONCLUSIONS OF LAW

1. The Secretary's New Rule facially violates the terms of 42 U.S.C. § 602(a)(38) because it ignores the conditional language of the statute which incorporates by reference the existing language of 42 U.S.C. § 606(a)(1) and (2). By focusing solely on the status of one parent of the Social Security beneficiary child, the New Rule conclusively presumes that all such children are "dependent" children who are "needy" and "deprived of parental support or care." 42 U.S.C. § 606(a).

2. The Secretary's New Rule is also inconsistent with the Secretary's own regulation requiring that both actual need and deprivation of parental support or care be present to qualify for AFDC benefits. *See*, 45 C.F.R. § 233.90(c)(1)(i).

3. The AFDC program's fundamental purpose is to provide financial assistance to needy children who are not adequately protected by state-imposed child support laws. *King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). *See* also 42 U.S.C. § 601. The Secretary's New Rule is thus in direct conflict with a long-standing goal of the AFDC program to foster self-suffi-

ciency and independence from public aid. Instead the New Rule mandates that children who are not otherwise needy must apply for AFDC benefits thus resulting in an increase in the number of children dependent upon welfare benefits.

4. In the AFDC program the term "income" refers only to that income which is both actually and legally available. *Owens v. Heckler*, 753 F.2d 675, 679–80 (8th Cir. 1985); *Snider v. Creasy*, 728 F.2d 369 (6th Cir.1984); and *Riddick v. D'Elia*, 626 F.2d 1084 (2d Cir.1980).

5. The purpose of Paragraph 38 of the Deficit Reduction Act is to stop the previous practice whereby families who shared living expenses *in fact* could *elect* to avoid having that cumulative income counted for AFDC purposes. Such an interpretation of Paragraph 38 is consistent with both the AFDC program's purpose of providing for needy children and the purpose of preventing non-AFDC children from actually providing income to their AFDC recipient half-siblings without those provided funds being treated as income to the AFDC child.

6. Paragraph 38's requirement of "availability of income" necessarily involves a two-step process of determining first, whether the Social Security Child's Insurance Benefits are actually available to the designated child, and second, whether, if available to that child, those funds are actually available to be shared with other family members who receive AFDC. The Secretary's New Rule also facially violates 42 U.S.C. § 602(a)(7) and (38) because it irrebuttably presumes the availability of this Social Security income to AFDC children without regard to whether those funds are in fact "actually available" to them.

7. Neither the express language of Paragraph 38 nor its general purpose require that the half-siblings of AFDC recipients/applicants must actually file an application for AFDC.

8. Social Security benefits are neither transferable nor assignable at law or in equity and they shall not be subjected to any legal process. 42 U.S.C. § 407. This

anti-alienation provision is "all-inclusive" and has been strictly construed to limit transfers of any Social Security benefits. *Tidwell v. Schweiker*, 677 F.2d 560, 567 (7th Cir.1982) *cert. denied*, 461 U.S. 905, 103 S.Ct. 1874, 76 L.Ed.2d 806 (1983). Section 407 "imposes a broad bar against the use of any legal process to reach all Social Security benefits. *Philpott v. Essex County Welfare Board*, 409 U.S. 413, 415, 93 S.Ct. 590, 591, 34 L.Ed.2d 608 (1973).

The coerced transfers of Social Security benefits that are necessarily contemplated by the Secretary's New Rule facially violate the anti-alienation provision of 42 U.S.C. § 407(a). Congress could not have intended such an interpretation of Paragraph 38. Two statutes should be interpreted, if possible, to give effect to each. *E.g., Watt v. Alaska*, 451 U.S. 259, 267, 101 S.Ct. 1673, 1678, 68 L.Ed.2d 80 (1981); *McKenzie v. Heckler*, 602 F.Supp. 1150, 1158 (D.Minn.1985) *appeal docketed*, No. 85–5103–MN (8th Cir. April 3, 1985). The Secretary's interpretation of Paragraph 38 with respect to Social Security would necessarily ignore the prohibitions of the anti-alienation statute.

9. The Secretary's New Rule is also inconsistent with 42 U.S.C. § 408(e) and with the Secretary's own existing regulations (20 C.F.R. §§ 404.2040, 404.2045) because its fundamental purpose is to make the representative payees use these Social Security funds to support half-siblings for whom the funds were never intended and to take those Social Security benefits away from the intended child beneficiary. The New Rule thus creates a policy which necessarily encourages and assumes that the representative payees for these Social Security beneficiaries will commit a federal criminal law violation of 42 U.S.C. § 408(e). This Court is convinced that Congress never intended Paragraph 38 to be interpretted in such a manner.

10. In addition to its general purpose, Paragraph 38 has a secondary and more narrow purpose which is to reverse the effect of the decisions in *Cunningham v. Toan*, 728 F.2d 1101 (8th Cir.1984) and

related cases so as to allow states to deem Social Security income of a parent as income that is presumptively available to that parent's own child who is seeking AFDC benefits.

11. The instant case is distinguishable from the case of *Cunningham v. Toan*, 762 F.2d 63 (8th Cir.1985), *modifying* 728 F.2d 1101 (8th Cir.1984) for two reasons. First, the minor parent Social Security beneficiaries in *Cunningham* had a clear legal obligation under state law to support their own children. There is no similar legal obligation on the part of a minor child to support his or her half-sisters and half-brothers. The undeniable effect of the Secretary's New Rule is to create an obligation to support one's half-siblings. Secondly, a Social Security beneficiary is subject to garnishment of his/her Social Security benefits for child support purposes. 42 U.S.C. § 659(a). Unlike the present case, the Congress did include an express reference to Section 407 as part of 42 U.S.C. § 659(a). Therefore, it was clear that the "anti-alienation" clause of section 407 was not applicable under the facts of *Cunningham*. Unlike the instant case, the *Cunningham* result is consistent with both the AFDC statutes and the Social Security Act provisions regarding the use and transfer of Social Security benefits.

12. The Secretary's New Rule also abridges the constitutionally recognizable property rights of these independently supported children without due process of law. The property interest at stake is the right to receive Social Security Child's Insurance Benefits which are simply a statutorily created substitute for the state created contract right to receive child support. 42 U.S.C. § 402(d); *See, Mathews v. Lucas*, 427 U.S. 495, 507, 96 S.Ct. 2755, 2763, 49 L.Ed.2d 651 (1976); *Jimenez v. Weinberger*, 417 U.S. 628, 634, 94 S.Ct. 2496, 2500, 41 L.Ed.2d 363 (1974).

13. While the Secretary contends this loss of property can be avoided by not applying for AFDC benefits, that is only true in a very abstract sense. The minor children in this class of Social Security re-

cipients are faced with a choice of either moving out of their home; refusing to support their half-siblings; or surrendering large amounts of their individual Social Security benefits to the support of others. "[P]rocedural due process rules are shaped by the risk of error inherent ... in the generality of cases, not the rare exceptions. *Mathews v. Eldridge*, 424 U.S. 319, 344, 96 S.Ct. 893, 907, 47 L.Ed.2d 18 (1976). Since the predictable result is that in the generality of cases these Social Security beneficiary children will surrender much of their own benefits, this constitutes a sufficient taking of a recognizable property interest to be entitled to the protections of due process of law. The requisite procedural protection must then be tailored to the capacity and circumstances of those who are to be heard. *Goldberg v. Kelly*, 397 U.S. 254, 268–69, 90 S.Ct. 1011, 1020–21, 25 L.Ed.2d 287 (1970).

### PRELIMINARY INJUNCTION STANDARD

14. The test for granting relief by preliminary injunction has been established in the case of *Dataphase Systems, Inc. v. CL Systems, Inc.*, 640 F.2d 109 (8th Cir.1981).

15. Based upon the foregoing discussion, the Court concludes that the intervenor-plaintiffs are likely to succeed on the merits of their case.

16. The injury to the intervenor-plaintiffs would be irreparable if an injunction is not issued and that injury cannot be made up by later entry of a money judgment. *See Chu Drua Cha v. Noot*, 696 F.2d 594, 599 (8th Cir.1982).

17. The balance of harm tips decidedly in favor of intervenor-plaintiffs. The defendant Secretary will suffer no irreparable harm if an injunction is granted.

18. The public interest in preserving the family structure outweighs the public concern for a potential saving of an indeterminate amount of money, especially since the Secretary's own rules provide for the recovery of any excess payments to AFDC recipients. 45 C.F.R. 233.20(a)(13).

19. Intervenor-plaintiffs' motion for preliminary injunction is granted. Defendants Heckler and Levine, their successors in office, and their agents and representatives are:

a. Enjoined from requiring that any member of the intervenor-plaintiff class as defined by this Court's Order must apply for AFDC benefits for himself; and

b. Directed to reinstate effective August 1, 1985, any intervenor-plaintiff class member's AFDC benefits reduced or terminated because of defendant Heckler's new regulation issued September 10, 1984 to be codified at 45 C.F.R. § 206.10(a)(1)(vii)(B) and/or defendant Levine's Instructional Bulletin No. 84–76, Attachment 9, issued September 24, 1984 and/or Instructional Bulletin 84–76d issued April 15, 1985; and

c. Directed to notify any intervenor-plaintiff class member who is now receiving AFDC as a result of the defendants' rule described in paragraph 19(b) above, of his/her right to be removed from the AFDC grant immediately and of the right of the children who actually desire to receive AFDC to request that their grants be recalculated to determine the amount of AFDC benefits that they would have received but for the application of the defendant's new regulations; and

d. Directed to notify all AFDC claimants who are members of the intervenor-plaintiff class of their right to a pre-deprivation hearing at which the Secretary must show that the affected Social Security beneficiary children are (1) actually needy, (2) are deprived of parental support or care, and that their Social Security Child's Insurance Benefits (3) are in fact available to them, and (4) if available to them are also available to other members of their family who receive AFDC benefits, all of which are prerequisite factual findings before any Social Security benefits of the non-AFDC class members may be counted as income available to

the AFDC applicant/recipient members of their family; and

e. The Defendant Commissioner is directed to issue an Instructional Bulletin within _____ working days of the filing of this order informing the directors of each county welfare agency within the State of Minnesota of the Court's Order herein and directing said agencies to comply with the terms of this Order; and

f. Any bond normally required for a preliminary injunction is waived.

20. Defendant Heckler's motion to dismiss is denied.

## PERMANENT INJUNCTION ORDER

This order converts the preliminary injunction issued by the court on April 1, 1985, and issues in its stead a permanent injunction. This permanent injunction issues because the original class members and the intervenors have established a violation of their rights, continuing irreparable injury without the entry of a permanent injunction, and the lack of an adequate remedy at law. *Rogers v. Scurr,* 676 F.2d 1211, 1214 (8th Cir.1982); *Beacon Theaters, Inc. v. Westover,* 359 U.S. 500, 506–07, 79 S.Ct. 948, 954–55, 3 L.Ed.2d 988 (1959). However, while both the original plaintiffs and the intervenor plaintiffs satisfy these elements, they do so for slightly different reasons.

As to the original plaintiffs, the court bases its decision to grant a permanent injunction in their favor for those reasons set out in its order granting their motion for a preliminary injunction. *See Gorrie v. Heckler,* 606 F.Supp. 368 (D.Minn.1985). As to the intervenor plaintiffs, the court must first distinguish a factually similar and recent Eighth Circuit case, issued on remand from the Supreme Court, *Cunningham v. Toan,* 762 F.2d 63 (8th Cir. 1985).

Like the intervenors in the present case, *Cunningham* involved the question of whether Old Age, Survivors and Disability Insurance (hereinafter "OASDI") benefits payable to one co-habitating member of a family are available, within the definition of 42 U.S.C. § 602(a)(38) (1984) as implemented by 45 C.F.R. § 206.10(a)(1)(vii), to other co-habitating members of the family for the purpose of AFDC eligibility. The Eighth Circuit in *Cunningham* held that "[i]f the OASDI beneficiary, the dependent child and the representative payee live within the same household, then the state must consider the OASDI benefits as income available in making AFDC eligibility and grant determinations." *Cunningham,* 762 F.2d at 66. Notwithstanding the Eighth Circuit's assumed availability of OASDI in *Cunningham,* the present case differs from *Cunningham* in one critical respect. *Cunningham* involved a minor parent recipient of OASDI funds and assumed those funds to be available to the minor parents' child for AFDC eligibility determination. Unlike *Cunningham,* the intervenor plaintiffs in the present case are siblings of AFDC applicants who receive OASDI benefits as a result of a deceased, disabled, or retired parent. 42 U.S.C. § 414. This fact distinguishes *Cunningham* because whereas it is reasonable to assume that funds available to a representative payee for a minor parent are available in fact to its child, it is not reasonable to assume that funds available to a representative payee for a minor child are available in fact to that child's co-habitating siblings. *See, e.g., White Horse v. Heckler,* 627 F.Supp. 848 (D.S.D. 1985). *And See* Minn. Stat. § 518.17 (codification of common law presumption that parents have the financial responsibility for supporting their minor children); Minn.Stat. § 609.375 (under Minnesota Law, all children have a right to parental support).

While *White Horse* noted the potential criminal sanctions for misapplying a named OASDI's funds, *see* 42 U.S.C. § 408(e), as one basis for striking down the Secretary's new rules' assumption of availability of OASDI benefits to co-habitating siblings, this court is equally concerned with the moral deficiencies and the resulting irreparable harm of such an assumption of avail-

ability. Like the original plaintiffs in this case, the practical result of the Secretary's new rule will be to force the intervenor plaintiffs to choose between:

> (a) moving out of their family home, so that the rest of their family may remain eligible for AFDC benefits, (b) remaining in their family's home refusing to apply for AFDC benefits, and thereby making their dependent siblings ineligible for benefits, or (c) staying in their family home, applying for AFDC benefits and thereupon being subject to § 602(a)(26)(A)'s required assignment of their child support to the state.

*Gorrie v. Heckler*, 606 F.Supp. at 372. Although the source of the original plaintiffs' funds were child support payments established by state law and technically distinguishable from the intervenor plaintiffs' OASDI benefits, the results of the choice foisted on the minor OASDI beneficiaries by the Secretary's new rule are no less severe.

In closing, the court notes that this case raises possible constitutional conflicts with the United States Constitution Tenth Amendment and Commerce Clause. However, the court, as it stated in its order granting a preliminary injunction, felt it unnecessary to address these issues as a resolution of this case was possible without doing so. Furthermore, assuming arguendo that a Tenth Amendment Challenge would be successful, the result would have meant a more sweeping condemnation of the Secretary's new rule. Instead, the court felt the more reasonable approach was to acknowledge the right of the federal government to attach conditions to its AFDC grants, *see Garcia v. San Antonio Metropolitan Transit Authority*, —— U.S. ——, 105 S.Ct. 1005, 1019, 83 L.Ed.2d 1016 (1985) ("Any substantive restraint on the exercise of Commerce Clause powers must find its justification on the procedural nature of this basic limitation, and it must be tailored to compensate for possible failings in the national political process rather than to dictate a 'sacred province of state autonomy.'") but to require the government to implement those conditions in a way that

comports with established notions of due process. *See Gorrie v. Heckler*, 606 F.Supp. 368 (D.Minn.1985). Therefore, IT IS HEREBY ORDERED that:

1. The following plaintiff class is certified:

All persons in the State of Minnesota who are:

a) Children who have child support to meet their needs and who are not on AFDC but who live with half-sibling(s) who receive AFDC;

b) Children who receive AFDC, but live with half-siblings who do not receive assistance because they receive child support;

c) Parents who receive child support on behalf of one or more of their minor children not receiving AFDC, and who also have custody of other minor children who are half-siblings and who presently receive AFDC to meet their subsistence needs;

d) Parents who pay child support pursuant to state court orders, or other agreement with the custodial parent, on behalf of their minor child(ren) who live with half-siblings who receive AFDC and who are unrelated to the supporting parent;

e) Children who have OASDI benefits to meet their needs and who are not on AFDC but who live with half-sibling(s) who receive AFDC;

f) Children who receive AFDC, but live with half-siblings who do not receive AFDC because they receive OASDI benefits; or

g) Parents who receive OASDI benefits on behalf of one or more of their minor children receiving AFDC, and who also have custody of other minor children who are half-siblings and who presently receive AFDC to meet their subsistence needs.

2. Plaintiffs' and Commissioner Levine's Motions for Summary Judgment are granted, and accordingly, Secretary Heckler's "interim final rule" as codified at 45

C.F.R. § 206.10(a)(1)(vii)(B) and Commissioner Levine's Instructional Bulletin 84–76, Attachment 9, are hereby declared inconsistent with 42 U.S.C. §§ 602(a)(7), (10) and (38), 606(a)(1) and (2), and 651 of the Social Security Act, and the U.S. Constitution.

3. Secretary Heckler and Commissioner Levine and their successors in office and their agents and representatives are:

a) Permanently enjoined from requiring that a class member as defined under paragraph 1 of this Order must apply for AFDC for himself; and accordingly,

b) Directed to continue the reinstatement of any class member's AFDC benefits reduced or terminated because of Secretary Heckler's regulations issued September 10, 1984 and codified at 45 C.F.R. 206.10(a)(1)(vii)(B) and/or Commissioner Levine's Instructional Bulletin No. 84–767, Attachment 9, issued September 24, 1984; and

c) Permanently enjoined from terminating the AFDC benefits of any class member who lives in the same household as a half-sibling child who has not applied for AFDC benefits, on the basis that such half-sibling has not applied for AFDC benefits; and

d) Directed to notify all AFDC claimants, who as class members now or in the future will be affected by 42 U.S.C. § 602(a)(38) because they live with a half-sibling child deprived of parental support or care and otherwise eligible for AFDC benefits but for the fact that she/he is not actually needy, that before AFDC benefits may be reduced or terminated, such claimants are entitled to a pre-deprivation hearing at which the defendants must show 1) that child support payments are, in fact available to such half-siblings and 2) if available to them, are also actually available to share with other members of their family who are receiving AFDC.

4. Secretary Heckler and her successors in office and her agents and representatives are:

a) Enjoined form requiring Commissioner Levine to determine whether child support payments made on behalf of such half-siblings are available to other members of their family receiving AFDC until and unless she adopts regulations which implement 42 U.S.C. § 602(a)(38) in a manner consistent with this Order and which set forth the method by which such determinations are to be made; and

b) Directed to pay federal financial participation (FFP) to the State of Minnesota for AFDC grant payments made to class members in accordance with the Court's April 1, 1985 Order and this Order.

5. Secretary Heckler's motions to dismiss and for summary judgment are hereby denied.