**Earline GIBSON, et al.**

v.

**Marguerite SALLEE.**

**No. 3–85–1283.**

United States District Court, M.D. Tennessee, Nashville Division.

March 5, 1986.

David A. Ettinger, Russell J. Overby, Legal Services of Middle Tenn., Inc., Nashville, Tenn., and Alex Hurder, Legal Services of Middle Tenn., Inc., Murfreesboro, Tenn., for plaintiffs Earline Gibson, Alice Murray, Mary J. Horton and Gloria Carter.

Jennifer Helton Small, Deputy Atty. Gen., John Philip Williams, Asst. U.S. Atty., Nashville, Tenn. and Edgar M. Swindell, Asst. Regional Atty., U.S. Dept. of H.H.S., Atlanta, Ga., for defendant.

## MEMORANDUM

WISEMAN, Chief Judge.

This cause came on to be heard on January 30, 1986 on plaintiffs' motion for preliminary injunctive relief. For the reasons discussed herein, the Court hereby GRANTS plaintiffs' motion for a preliminary injunction and, because it is unopposed, GRANTS plaintiffs' motion for class certification.[1]

---

1. The class is defined as follows:

(a) All AFDC recipients residing in Tennessee who have had, or may in the future have, their AFDC benefits reduced, terminated or denied due to the inclusion, pursuant to Human Services Bulletin No. 97, of the Social Security or

Plaintiffs have brought this action pursuant to 42 U.S.C. § 1983 and under 28 U.S.C. § 1331. Plaintiffs challenge a policy of the Tennessee Department of Human Services (TDHS) concerning Aid to Families with Dependent Children (AFDC) benefits. The challenged policy, set forth in Human Services Bulletin No. 97, became effective in November of 1984. The policy requires that children who receive Social Security or child support income must be included, with all other half-siblings, in a AFDC assistance unit and that their income must be included in calculating AFDC eligibility. Plaintiffs allege that defendants' policy is contrary to the federal AFDC and Social Security Acts as well as in violation of several Constitutional provisions.

 The factors to be considered in determining whether to grant preliminary relief include: 1) whether a substantial likelihood exists that the party seeking preliminary relief will ultimately succeed on the merits; 2) whether there is a likelihood that the party seeking preliminary relief will suffer immediate and irreparable harm if the relief is not granted; 3) whether granting the relief would cause substantial harm to the other parties; and 4) whether granting preliminary relief would protect the public's interest. *See, e.g., American Motor Sales Corp. v. Runke,* 708 F.2d 202 (6th Cir.1983). These four factors should be applied in a flexible manner, *Roth v. Bank of the Commonwealth,* 583 F.2d 527, 537 (6th Cir.1978), but courts have recognized the likelihood of success on the merits as one of the most significant factors in determining appropriateness of injunctive relief. *See, e.g., Massachusetts Association for Older Americans v. Sharp,* 700 F.2d 749, 751 (1st Cir.1983).

## I. LIKELIHOOD OF SUCCESS ON THE MERITS

The Court must first make an assessment of whether plaintiffs' arguments present a sufficient likelihood of success so as to justify preliminary relief. The Sixth Circuit has interpreted this requirement as determining "not that the plaintiff certainly has a right, but that he has a fair question to raise as to the existence of such a right." *Brandeis Machinery and Supply Corp. v. Barber Greene Co.,* 503 F.2d 503 (6th Cir.1974); *Riverside Park Realty Co. v. Federal Deposit Insurance Co.,* 465 F.Supp. 305, 310 (M.D.Tenn.1978).

The TDHS promulgated the policy at issue in the present action following the enactment of Section 2640(a) of the Deficit Reduction Act of 1984 (DEFRA), codified as 42 U.S.C. § 602(a)(38), which provides that in determining the eligibility of a dependent child

> the state agency shall (except as otherwise provided in this part) include—(A) any parent of such child, and (B) any brother or sister of such child, if such brother or sister meets the conditions described in clauses (1) and (2) of 606(a) of this title, if such parent, brother, or sister is living in the same home as the dependent child, and any income of or available for such parent, brother or sister shall be included in making such determination and applying such paragraph with respect to the family (notwithstanding section 405(j) of this title, in the case of benefits provided under subchapter II of this chapter). . . .

42 U.S.C. § 602(a)(38). The sibling deeming provision of Section 602(a)(38) was implemented by 45 C.F.R. § 206.-10(a)(1)(vii)(B).

First, plaintiffs argue that the policy set forth in Human Services Bulletin No. 97

---

child support income of half-siblings residing in the household.

(b) All children residing in the State of Tennessee who now or in the future receive Social Security benefits or child support income who do not wish to be included in their half-siblings' AFDC eligibility unit, but who, pursuant to Human Services Bulletin No. 97, must be included

along with their income in the calculation of AFDC eligibility.

(c) All persons living in the State of Tennessee who are now or will in the future be Social Security representative payees for a child or children described in (b) above and who reside with such child or children.

violates 42 U.S.C. § 602(a)(38) by ignoring the clear requirement of Section 602(a)(38) that half-siblings are to be included only if they meet "the conditions described in clauses (1) and (2) of [42 U.S.C. § 606(a) ]." On the contrary, defendant argues that the TDHS policy was mandated by Section 602(a)(38).

Section 606(a) provides that:

(a) The term "dependent child" means a *needy child* (1) who has been deprived of parental support or care by reason of the death, continued absence from the home ... or physical or mental incapacity of a parent, ... and (2) who is (A) under the age of 18 or (B) at the option of the state, under the age of 19 and a full time student.... (Emphasis added).

Plaintiffs interpret Section 602(a)(38) as requiring the inclusion of a half-sibling only if he or she is "needy." As a basis for this reading, plaintiffs point out that Section 606(a)(1) and (2) both begin with the word "who," which refers to the preceding definition of a " 'dependent child' as a needy child (1) who...." In support of their interpretation, plaintiffs cite 45 C.F.R. § 206.10(a)(1)(vii), which provides that for a child to be included in the AFDC unit pursuant to Section 602(a)(38), the child must be "otherwise eligible for assistance."

Defendant argues that plaintiffs' argument must fail because it ignores the significant fact that the "needy" language which is part of the definition of a "dependent child" was not incorporated into the requirements for deeming the sibling income. Rather, defendant notes, only clauses (1) and (2), which occur after the needy child definition, are included in Section 602. Thus, defendant concludes that there is simply no requirement under DEFRA that the "needy" factor be considered before deeming a sibling's income.

 In ruling upon a Minnesota policy that, like the policy at issue in the present case, required the inclusion of siblings in an AFDC unit regardless of whether or not they were needy, a district court held that the statute was defective in failing to incorporate "Section 606(a)(1) and (2)'s tradition-al showing that applicants for AFDC benefits *are in fact* (1) *needy ...." Gorrie v. Heckler,* 606 F.Supp. 368, 376 (D.Minn. 1985) (emphasis added). Based on the rationale of *Gorrie,* the Court concludes that plaintiffs have a sufficient likelihood of success on their argument that TDHS's policy violates 42 U.S.C. § 602(a)(38).

Second, plaintiffs argue that the TDHS policy violates the availability principle contained in 42 U.S.C. § 602(a)(7). Plaintiffs discuss a recent Supreme Court case which held that Section 602(a)(7) prohibits attribution of unavailable income to an applicant or recipient in the AFDC program. *Heckler v. Turner,* 470 U.S. 184, 105 S.Ct. 1138, 1147–48, 84 L.Ed.2d 138 (1985) (holding mandatory tax withholdings excludible from income for purposes of § 602(a)(7) because they are "unavailable"). The *Heckler* Court stated that the purpose of the availability principle is to prevent the states from relying on imputed or unrealizable sources of income to depreciate artificially a recipient's need. 105 S.Ct. at 1148. The Court further declared that the principle serves primarily to prevent states from "conjuring fictional sources of income and resources by imputing financial support from persons who have no obligation to furnish it...." *Id.* at 1147.

Since the availability principle is contained in 42 U.S.C. § 602(a)(7), Congress could, consistent with Constitutional limitations, curtail its application in certain circumstances. However, plaintiffs argue that there is no evidence that Congress intended to amend 42 U.S.C. § 602(a)(7) when it enacted 42 U.S.C. § 602(a)(38). Rather, plaintiffs take the position that Congress' expressed statement that inclusion pursuant to Section 602(a)(38) was subject to exception "as otherwise provided in this part" indicates that Congress did not intend to curtail the availability principle by mandating the attribution of legally unavailable funds.

Plaintiffs assert that deeming a child's child support income as available to other family members violates Section 602(a)(7).

Plaintiffs argue that under Tennessee law child support is intended solely for the benefit and use of the minor children of the person paying support, *Pruett v. Pruett,* 40 Tenn.App. 276, 291 S.W.2d 278, 286–287 (1956), and that the defendant, prior to the change in policy challenged here, recognized that child support was income specifically designated for a particular person and could not be considered available to any other person unless the child was also a parent. *See* Tennessee Department of Human Services Rules and Regulations (hereinafter "DHS Rules") Chapter 1240–1–4–.17–(7)–(b)–(v). Plaintiffs further assert that the subject of family law, including child support obligations, is governed by state law. Plaintiffs point out that where state family law comes into conflict with a federal statute the state law may only be overridden under the Supremacy Clause if Congress has "positively required by direct enactment" that state law be preempted and if the state law would cause "major damage" to a "clear and substantial federal" interest. *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1 (1979).

█ Plaintiffs conclude by arguing that given the state interest in the amount of support a non-custodial parent is to pay and the purposes for which that support is to be used, this Court should follow the district courts in *Gorrie v. Heckler,* 606 F.Supp. 368, 373 (D.Minn.1985) and *White Horse v. Heckler,* 627 F.Supp. 848 (D.S.D. 1985), which held that 42 U.S.C. § 602(a)(38) should be interpreted to include child support payments only to the extent that they are actually available to other family members. Again, the Court is persuaded that plaintiffs have a substantial likelihood of success in prevailing upon their claim based on the availability principle of 42 U.S.C. § 602(a)(7).

Now the Court turns to the plaintiffs claim arising out of the Social Security Act's mandate upon representative payees to obtain Title II benefits only for the "use and benefit" of the child beneficiary. Section 205(j) of Title II, codified as 42 U.S.C.

§ 405(j). *See also* 42 U.S.C. § 402(d) (identifies child's entitlement to insurance benefits under certain circumstances); 42 U.S.C. § 407(b) (provides that benefits to the child under the subchapter "shall not be transferable or assignable"); and 42 U.S.C. § 408(e) (provides that any representative payee who willfully converts a payment to a use "other than for the use and benefit of [the beneficiary]" is guilty of a felony). The challenged TDHS policy presumes that a child's Social Security benefits are available to his or her half-siblings, and, thus, plaintiffs argue, violates the above-named Social Security Statutes. In response, defendant argues that Section 602(a)(38)'s express language requiring inclusion of Title II benefits "notwithstanding § 405(j)" repudiates plaintiffs' position.

It is apparent to this Court, as pointed out in *White Horse,* that the issue depends on whether Congress implicitly or explicitly intended to alter the provisions of the Title II benefits legislation contained in Sections 405(j) and 408(e) when it enacted Section 602(a)(38). This issue has been addressed by other courts in recent months. Counsel has cited four district court decisions finding in the government's favor on identical or substantially similar issues. *See Oliver v. Ledbetter,* 624 F.Supp. 325 (D.Ga.1985); *Creaton v. Heckler,* 625 F.Supp. 26 (C.D. Cal.1985); *Huber v. Blinzinger,* 626 F.Supp. 30 (N.D.Ind.1985); *Shonkwiler v. Heckler,* 628 F.Supp. 1013 (S.D.Ind.1985). Three contrary decisions support the plaintiffs' position here. *See Frazier v. Pingree,* 612 F.Supp. 345 (D.Fla.1985); *White Horse v. Heckler,* 627 F.Supp. 848 (D.S.D. 1985); *Gorrie v. Heckler,* 606 F.Supp. 368 (D.Minn.1985).

In order for Section 602(a)(38) to be construed as a repeal of the Social Security Act requirement that Social Security benefits are only for the use and benefit of the beneficiary, the intention of Congress to repeal this requirement must be "clear and manifest." *Watt v. Alaska,* 451 U.S. 259, 101 S.Ct. 1673, 68 L.Ed.2d 80 (1981). The *Pingree* court held that the ambiguous reference to 42 U.S.C. § 405(j) in Section

602(a)(38) and the legislative history of that section are not sufficient to indicate an alteration of the essence of the Title II benefits scheme—that those benefits are to be used *only* on behalf of the minor beneficiary. The Court added that because of the criminal nature of Section 408(e), it was extremely reluctant to read 42 U.S.C. § 602(a)(38)'s ambiguous reference to 42 U.S.C. § 405(j) as an implied repeal of 42 U.S.C. § 408(e). The Court concluded that there was no clear intention to repeal the criminal statute, and thus, it found that plaintiffs had a substantial likelihood for success on the merits of their argument. 612 F.Supp. at 348–49.

Plaintiffs contend that the purpose of the "notwithstanding" phrase in Section 602(a)(38) was not to repeal the "use and benefit" restriction on child insurance benefits, but rather to reverse the effect of cases which precluded states from deeming the Social Security income of a parent as presumptively available to that parent's own child who was seeking AFDC benefits. *Gorrie v. Heckler*, 606 F.Supp. at 370. Plaintiffs further contend that the Court has sufficient reason to be reluctant to read Section 602(a)(38) as a repeal of the relevant Social Security provisions and therefore to find merit with plaintiffs' position regarding the inclusion of half-siblings receiving Social Security benefits in the AFDC eligibility unit.[2]

On the basis of the arguments set forth above, the Court is of the opinion that plaintiffs arguments as to violations of the Social Security Act have a fair likelihood of success on the merits. Based on the Court's conclusions regarding plaintiffs' statutory claims, there is no need for the Court to assess the plaintiffs' likelihood of success on their constitutional claims.

## II. ADDITIONAL CONSIDERATIONS FOR A PRELIMINARY INJUNCTION

The remaining three considerations for preliminary injunctive relief are (1) the like- lihood that irreparable harm will result if such relief is not granted and conversely, (2) whether granting such relief would cause substantial harm to other parties or (3) whether it would protect the public interest. Defendant acknowledges that, assuming *arguendo* the correctness of plaintiffs' legal argument on deeming, irreparable harm could be established.

The parties differ greatly on the effect that the preliminary relief would have on the defendant and whether it would protect the public's interest. Defendant points out that in the instant case, the state's policy was fully a year old at the time of the filing of the instant lawsuit and fourteen months old when injunctive relief was requested. Moreover, the final orders in Alice Murray's, Gloria Carter's and Earline Gibson's state administrative proceedings have been outstanding, respectively, for eleven, ten and nine months. Because a substantial number of cases have been affected during the interim, defendant submits that an inequitable and enormous administrative burden would be caused by the granting of preliminary relief at this point and time. For the same reasons, defendant insists that a grant of preliminary relief to plaintiffs is not in the best public interest.

On the contrary, plaintiffs argue that the financial burden on defendant, although admittedly substantial, is not a sufficient basis alone upon which to deny injunctive relief. *See Milliken v. Bradley*, 433 U.S. 267, 290, 97 S.Ct. 2749, 2762, 53 L.Ed.2d 745 (1977). Plaintiffs rely primarily on the legal proposition that in assessing the potential harm to the defendant, the balance between the potential harm to the plaintiffs and the defendant must be considered. *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 537 (6th Cir.1978). In the present case, if the preliminary relief is granted and the defendant ultimately prevails, any

---

**2.** The current rules and practices of the Social Security Administration do not reflect any alteration of the Social Security requirement that benefits are for the use and benefit of the beneficiary alone. For example, named plaintiff Al- ice Murray was warned not to spend a penny of the Social Security income she received on behalf of her son Terrance on her other children. This practice gives further support to plaintiffs' argument.

excess payment to the plaintiffs can be recovered. *See* 45 C.F.R. 233.20(a)(13). Conversely, if the relief is denied and plaintiffs ultimately prevail, the Eleventh Amendment will preclude the restoration to the plaintiffs of any past unpaid benefits. *Edelman v. Jordan,* 415 U.S. 651, 668, 94 S.Ct. 1347, 1358, 39 L.Ed.2d 662 (1974). Lastly, plaintiffs argue that the public interest would be served by meeting the subsistence needs of poor children and by protecting the Title II benefits and child support payments if the children are entitled to such.

The Court finds that the public interest may be harmed by continued enforcement of the challenged policy because it places representative payees of Title II beneficiaries in a position where they must either use the beneficiary's Title II funds for other family members, with the risk of criminal penalties, or break up their families to avoid having their AFDC benefits reduced. Additionally, as documented by a Pennsylvania court, the new policy may have a detrimental effect on the public interest by reducing the incentive of non-custodial parents to pay child support because the child support payments will be subsidizing other members of the household. *Johnson v. Cohen,* No. 84–6277 (Oct. 2, 1985) [Available on WESTLAW, DCTU database].

Thus, the Court concludes that, on balance, the four factors necessary for injunctive relief militate in favor of the granting of a preliminary injunction in the present case. Accordingly, the Court shall enter an Order enjoining the defendant's practice of counting the income of half-siblings who receive Social Security and child support benefits as available to other half-siblings otherwise eligible for AFDC benefits.