**Vernita BALDWIN, on Behalf of herself and her minor children, Wilnetta Baldwin, Lapheitta Baldwin and Schlonda Baldwin, and all others similarly situated, Plaintiff,**

**v.**

**James G. LEDBETTER, in his official capacity as Commissioner of the Georgia Department of Human Resources; and Otis R. Bowen, M.D., in his official capacity as Secretary of the United States Department of Health and Human Services, Defendants.**

**Civ. A. No. C85–4340A.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Oct. 18, 1986.

John L. Cromartie Jr., Phyllis Holmen, Atlanta, Ga., Lisa J. Krisher, Augusta, Ga., Linda Hay, Columbus, Ga., William C. Thompson, Jenny Mittelman, Atlanta, Ga., for plaintiffs/intervenors.

Michael J. Bowers, Mary Foil Russell, Office of Atty. Gen., Jane Wilcox Swift, Asst. U.S. Atty., Atlanta, Ga., for defendants.

### ORDER

FORRESTER, District Judge.

This class action is before the court on cross motions for summary judgment as well as plaintiff's motion for preliminary injunction.[*] Because a ruling on the motions for summary judgment is dispositive of the request for injunctive relief, the cross motions for summary judgment will be addressed first.

### I. FINDINGS OF FACT.

Plaintiffs challenge regulations governing Georgia's Aid to Families with Dependent Children (AFDC) program. The AFDC program was authorized by Title IV–A of the Social Security Act of 1935, 42 U.S.C. § 601, *et seq.* This program is a scheme of cooperative federalism intended to provide "financial assistance to needy children and the parents or relatives who live with and care for them...." *Heckler v. Turner,* 470 U.S. 184, 105 S.Ct. 1138, 1141, 84 L.Ed.2d 138 (1985). The federal government reimburses a participating state for

---

[*] A class of plaintiffs was certified by order of June 30, 1986.

approximately one-half the cost of the program. 42 U.S.C. § 603. The participating state in return must submit a plan for the administration of the program for approval by the Department of Health and Human Services. 42 U.S.C. § 602(a) & (b). Defendant James G. Ledbetter, acting as Commissioner of the Georgia Department of Human Resources, is responsible for the local administration of the AFDC program in Georgia, while defendant Otis R. Bowen, acting as Secretary of the Department of Health and Human Services (Secretary), is responsible for promulgating federal regulations governing Georgia's state plan.

The original representative plaintiffs in this action are Vernita Baldwin and her children, Wilnetta, Lapheitta and Schlonda Baldwin. Plaintiff Schlonda Baldwin is the half-sister of Wilnetta and Lapheitta Baldwin. Prior to October 1, 1984, Ms. Baldwin and Schlonda comprised a family unit eligible for and receiving $174 per month in AFDC benefits. This payment represented the maximum grant allowed by Georgia's payment standard for a family of two with no other income.[1]

Schlonda Baldwin's half-sisters, Wilnetta and Lapheitta Baldwin, were not originally included as part of the AFDC family filing unit. These plaintiffs were supported by child support payments made by their father, Willie King, pursuant to an agreement approved by the Christians Circuit Court, Hopkinsville, Kentucky, on January 15, 1980. The court approved payments in the amount of $120 per month, but Mr. King voluntarily agreed in 1983 to raise the court-ordered amount to $200 per month. Affidavit of Vernita Baldwin, ¶ 4. Coupled with the $174 in AFDC payments received by Ms. Baldwin and Schlonda, these plaintiffs as a household enjoyed an income of $374 per month prior to October 1, 1984.

The statutory scheme which allowed Ms. Baldwin to exclude Wilnetta and Lapheitta from the AFDC family filing unit was al-

tered in 1984. Section 2640(a) of the Deficit Reduction Act of 1984 (DRA), Pub.L. No. 98–369, 98 Stat. 1145 (1984) (codified at 42 U.S.C. § 602(a)(38)), provided in pertinent part:

> That in making the determination under paragraph (7) with respect to a dependent child and applying paragraph (8), the state agencies shall (except as otherwise provided in this part) include—
>
> (A) Any parent of such child, and
>
> (B) Any brother or sister of such child, if such brother or sister meets the conditions described in clauses (1) and (2) of section 606(a) of this title, if such parent, brother, or sister is living in the same house as the dependent child, and any income of or available for such parent, brother, or sister shall be included in making such determination and applying such paragraph with respect to the family....

This same statutory revision of the Social Security Act also provided that the first $50 of child support payments not be counted as income to the AFDC family filing unit for the purpose of determining eligibility and benefits. DRA, Pub.L. No. 98–369, section 2640(b)(1), 98 Stat. 1145 (1984) (codified at 42 U.S.C. § 602(a)(8)(A)(vi)).

Pursuant to the foregoing statutory authorization regarding the inclusion of co-resident family members in the AFDC family filing unit, the Secretary promulgated the following regulation:

> For AFDC only, in order for the family to be eligible, an application with respect to a dependent child must also include, if living in the same household and otherwise eligible for assistance:
>
> ....
>
> (B) Any blood-related or adoptive brother or sister.

45 C.F.R. § 206.10(a)(1)(vii)(B). Defendant Ledbetter in turn sent a letter to county directors of AFDC indicating the changes effective October 1, 1984. This letter de-

---

**1.** Georgia is given the discretion of calculating the amount of AFDC grants based upon a percentage of a statewide standard of need for a family of a given size. *See* 45 C.F.R. § 233.20.

Georgia's payment standard is currently set at approximately sixty-one percent of the need standard, though it is subject to change.

fined the AFDC family filing unit in Georgia as follows:

> Beginning October 1, 1984, the needs and income of the parent(s) and all minor siblings or half-siblings living with a dependent child who applies for or receives AFDC must be included for eligibility determination and benefit calculation. SSI recipients, step-brothers, and step-sisters are excluded from this requirement. In other words, an A/R will no longer have the option to voluntarily exclude the needs or income of herself or a child from a grant. Similarly, there is no longer any restricted income.
>
> As stated, the A/R does not have the option to exclude any family member. Therefore, if the A/R refuses to include the income and needs of a child or herself or we are unable to verify the income of a previously excluded child, total ineligibility of the entire group results as we are unable to determine eligibility.

Eligibility Services County Letter No. 84–44, August 23, 1984 (Appendix D, Plaintiffs' Motion for Preliminary Injunction).

Ms. Baldwin was told in September of 1984 by the Muscogee County Department of Family and Children Services that the foregoing alterations in AFDC eligibility and benefit determinations required that she include Wilnetta and Lapheitta in the AFDC family filing unit previously comprised of only herself and Schlonda Baldwin. Aff., ¶ 6. Rather than risk losing AFDC benefits because of ineligibility, Ms. Baldwin allowed the inclusion of Wilnetta and Lapheitta in the AFDC family filing unit. *Id.* As a condition of eligibility, Ms. Baldwin was required to assign to the state Wilnetta and Lapheitta's rights of support from their father. 42 U.S.C. § 602(a)(26)(A). Georgia undertook the collection of child support payments from Mr. King pursuant to the child support enforcement program set up by the state as a condition of federal funding. *See* 42 U.S.C. §§ 602(a)(27), 651 *et seq.*

Although the payment standard for a family of four is $264 per month, Ms. Baldwin and her family do not qualify for an absolute grant of $264. Because the child support income is deemed available to the entire family, 42 U.S.C. § 602(a)(38)(B), the family is assumed to have an income of $150 per month, or $200 less the disregard of the first $50 in child support income. 42 U.S.C. § 602(a)(8)(A)(vi). Consequently, Ms. Baldwin's family receives a grant of $114 per month. When this grant is coupled with the $150 in child support collected by the state and the $50 disregarded, Ms. Baldwin has a monthly income of $314, or $60 less than before the amendment of the AFDC family filing unit. Baldwin Aff., ¶¶ 6–7. In short, the family receives funds from the state amounting to the payment standard of $264 which represents a $114 grant and $150 in collected child support monies. The family also receives the $50 disregarded with no strings attached.

The Baldwins are joined in their complaint by representative plaintiff-intervenors Brenda Maffett and her children, of Atlanta, Georgia. Ms. Maffett has five children, including Melissa Maffett whose father is Tyrone Davis. Maffett Aff., ¶ 3. Prior to 1984, Ms. Maffett's family received AFDC benefits which were calculated according to the needs and income of all of Ms. Maffett's children except for Melissa who received child support from Mr. Davis. *Id.*, ¶ 5. Mr. Davis has voluntarily paid $10 per week in child support for Melissa and has promised to raise the amount of support to $25 per week. *Id.*, ¶¶ 11 & 24. Ms. Maffett has insured that the $10 per week for Melissa is used for Melissa's benefit. *See id.*, ¶ 29.

After the implementation of the new family filing unit rule, plaintiff Maffett was forced to include Melissa in her AFDC family filing unit. *Id.*, ¶ 6. This move evidently did not result in an immediate loss of income because the total monthly child support received by Melissa did not exceed the $50 disregard. 42 U.S.C. § 602(a)(8)(A)(vi). Nevertheless, Ms. Maffett insists that the family filing unit amendment has had repercussions in her household. In particular, Ms. Maffett complains that the new rule has resulted in the

harassment of Mr. Davis by child support enforcement officials. This harassment, as well as Mr. Davis' general dissatisfaction in having his child placed upon the welfare roles, may result in the cessation of Mr. Davis' otherwise regular visits with Melissa. *Id.*, ¶¶ 13–20.

## II. MOTIONS FOR SUMMARY JUDGMENT.

### A. *Count One.*

■ Count one of plaintiff's complaint alleges that defendants' regulations are not authorized by 42 U.S.C. § 602(a)(38). Insofar as this allegation asserts the invalidity of the Secretary's regulation, this court finds that the challenged regulation effectuates the statutory mandate directing inclusion of any co-resident sibling of an AFDC recipient child in the AFDC family filing unit if that sibling lives in the same household and is otherwise eligible for assistance. *Oliver v. Ledbetter*, 624 F.Supp. 325, 330–31 (N.D.Ga.1985).

■ The specific application of the statutory amendment to child support recipients, as represented by defendant Ledbetter's aforementioned letter, also appears to the court to be a straightforward interpretation of statutory language. In determining whether Congress intended to deem child support income available so that an AFDC family has the choice either of losing eligibility or including that child in the family filing unit, this court looks first to the plain language of the statute and to legislative history if such language is unclear. *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984).

The statute on its face reveals Congress' intent to require the inclusion of "any brother or sister of such child" if such brother or sister is living in the same household and otherwise eligible for assistance. 42 U.S.C. § 602(a)(38)(B). The plain language also indicates an intention to deem "any income of or available for such ... brother, or sister" available to the AFDC family filing unit. *Id.* Nothing in the language of the statute itself calls the court's attention to any intention to exclude a child support recipient or her monthly income merely because her income is for her support alone and is thus legally restricted.

Even if the court were to conclude that the statute on its face is unclear, legislative history indicates that Congress clearly intended to end the practice whereby an AFDC family could exclude a child support recipient from the family filing unit in order to prevent the inclusion of child support income in the family unit's income. The statutory amendment was the result of over two years of study by both Congress and the Secretary of Health and Human Services.[2] The resulting statutory amendment was explained by the Senate Finance Committee as specifically ending the practice of excluding a child receiving child

---

**2.** The Senate Finance Committee first proposed to reduce federal AFDC expenditures by prohibiting "[t]he present practice whereby families exclude members with income, such as Social Security or child support payments, in order to maximize family benefits...." Tax Equity and Fiscal Responsibility Act of 1981, S.Rep. No. 494, 97th Cong., 2d Sess. 47, 1982 U.S.Code Cong. & Ad.News 781, 823. This proposal was dropped in a Conference Committee with the House of Representatives. H. Conf. Rep. 97–760, 97th Cong., 2d Sess. 446, 1982 U.S.Code Cong. & Ad.News 1226. The Secretary of Health and Human Services submitted a proposal to the U.S. Senate on May 25, 1983, almost identical to the resulting statutory language at issue in this litigation. This proposal was intended to require that the states include "as a member of the AFDC family (both the needs

and the accountable income of) ... the minor siblings of a dependent child for whom aid is claimed and who are living with a dependent child if the siblings are, themselves, deprived of parental support or care and under the age limit selected by the State." *See* Letter from Secretary Margaret M. Heckler to Vice President George Bush (Exhibit A, Federal Defendant's Brief in Opposition to Preliminary Injunction). The Senate Finance Committee approved a version of this proposal indicating their intention to prohibit the exclusion of child support recipients and their income from the AFDC family filing unit. S.Rep. No. 300, 98th Cong., 2d Sess. 165 (Comm. print 1983). Although this proposal was dropped in a conference with the House of Representatives, it resurfaced the following year in the Deficit Reduction Act.

support from the AFDC family filing unit. *See* DRA, S.Rep. No. 98–169, 98th Cong., 2d Sess. 980 (Comm. print 1984).[3] The Conference Committee approved the Senate proposal in almost identical form with the only modification being the addition of the provision disregarding the first $50 of child support income when calculating a family's eligibility and benefits. DRA, H. Conf. Rep. No. 98–861, 98th Cong., 2d Sess. 1407, 1984 U.S.Code Cong. & Ad.News 2095 ("requir[ing] states to include in the filing unit the parents and all minor siblings with a dependent child *who applies for or receives AFDC*"). Consideration of the legislative history leads inexorably to the conclusion that Congress intended that children receiving child support who are co-resident siblings of AFDC recipient children be included in the AFDC family filing unit and that the child support income be included in the determination of the AFDC family unit's eligibility. *Accord Gilliard v. Kirk*, 633 F.Supp. 1529, 1548–51 (W.D.N.C.1986); *Sherrod v. Hegstrom*, 629 F.Supp. 150, 152 (D.Or.1985); *Maryland Department of Human Resources v. United States Department of Health and Human Services*, 648 F.Supp. 1017, 1024 (D.Md.1986); *Childress v. Heckler*, Civil Action 85–2–1459, Transcript of Bench Ruling at 3–4 (D.Col., January 23, 1986); *Johnson v. Cohen*, Civil Action No. 84–6277, Slip Op. at 36–37 (E.D. Penn., October 2, 1985) [Available on WESTLAW, DCTU database]. *Shonkwiler v. Heckler*, 628 F.Supp. 1013, 1018 (S.D.Ind. 1985).

This court is not dissuaded from the foregoing conclusions by plaintiffs' argument that child support recipients are not otherwise eligible for assistance as required by section 602(a)(38). Paragraph 38 requires co-resident siblings to meet "the conditions

described in clauses (1) and (2) of section 606(a)...." This referenced section defines a "dependent child" as,

... a needy child (1) who has been deprived of parental support or care by reason of the death, continued absence from the home (other than absence occasioned solely by reason of the performance of active duty in the uniformed services of the United States), or physical or mental incapacity of a parent, and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, step-mother, step-brother, stepsister, uncle, aunt, first cousin, nephew, or niece, in a place of residence maintained by one or more of such relatives as his or their own home, and (2) who is (A) under the age of eighteen, or (B) at the option of the State, under the age of nineteen and a full-time student in a secondary school (or in the equivalent level of vocational or technical training), if, before he attains age nineteen, he may reasonably be expected to complete the program of such secondary school (or such training)....

42 U.S.C. § 606(a).

Child support recipients are minors and are by definition deprived of parental support by virtue of the absence of one parent from the home. *Oliver*, 624 F.Supp. at 331. The plaintiffs' argument that an individual determination of need for a child support recipient is required has already been thoroughly examined and rejected by this court. *Id.*

The determination of need is made under 42 USC § 602(a)(7). Paragraph [38], the new family filing unit provision, explicitly states that "in making the determination of paragraph (7)—i.e., the need determination—the state shall include the

---

**3.** The pertinent portion of this Committee report reads as follows:

The provision approved by the Committee would require States to include in the filing unit the parents and all dependent minor siblings (except SSI recipients and any stepbrothers and step-sisters) living with a child who applies for or receives AFDC....

This change will end the present practice whereby families exclude members with income in order to maximize family benefits, and will insure that the income of family members who live together and share expenses is recognized and counted as available to the family as a whole. A similar provision was approved by the Committee last year, but was dropped in conference with the House.

**630**

income of brothers and sisters living with the AFDC child...." [T]he court firmly believes that Congress intended by this language to focus the determination of need not on individual family members, but rather on the neediness of the family unit as a whole.

*Id; Accord Gilliard,* 633 F.Supp. at 1546. *But see Gorrie v. Heckler,* 606 F.Supp. 368, 371–72 (D.Minn.1985); *Gibson v. Salle,* Civil Action No. 38–85–1283, Slip Op. at 5–7 (N.D.Tenn., February 28, 1986).[4]

This court is also not persuaded by plaintiffs' argument that the principle of "actual availability" prohibits deeming legally restricted child support income as available to the AFDC family filing unit. This principle has its origins in congressional consideration of the 1939 amendments to the Social Security Act. Members of Congress were apparently concerned that the states might deem income available to the AFDC family which was not actually contributed to the family. *Turner,* 470 U.S. at 200, 105 S.Ct. at 1147–48. The Supreme Court has read the legislative history behind the 1939 amendments to prohibit states from "relying on imputed or unrealizable sources of income artificially to depreciate a recipient's need." *Id.* at 201, 105 S.Ct. at 1148. Thus, in *King v. Smith,* 392 U.S. 309, 319–20, 88 S.Ct. 2128, 2134–35, 20 L.Ed.2d 1118 (1968), the Court invalidated an Alabama regulation denying assistance to otherwise eligible children because their mother lived with a man not their father. This principle was also employed in the invalidation of a North Carolina regulation deeming as available to

the entire family child support monies received by a sibling of an AFDC recipient. *Gilliard v. Craig,* 331 F.Supp. 587, 593 (W.D.N.C.1971), *aff'd without opinion,* 409 U.S. 807, 93 S.Ct. 39, 34 L.Ed.2d 66 (1972).

While the challenged regulations at issue might be subject to a similar attack as made in the *Gilliard v. Craig* case absent congressional authorization, such authorization is clearly present in the form of the family filing unit amendment. The amendment makes specific reference to section 602(a)(7), the need determination paragraph which has been identified as the source of the "availability" principle. It is said that this amendment reflects a presumption that a mother and her children share the expenses of the household such as food and shelter. *Shonkwiler,* 628 F.Supp. at 1018. While the court might quarrel with this presumption in view of the use restrictions on child support payments, it is a presumption which the legislative branch has employed and which this court concludes underlies the congressional authorization of deeming child support income as available to the family unit. For the foregoing reasons, the court concludes that Congress authorized deeming the child support income of coresident siblings of AFDC recipients as available to the family. This new approach to the availability of such income reflects Congress' intention to assess family need and income on an aggregate basis. *Accord Gilliard v. Kirk,* 633 F.Supp. at 1546–47. *But see Gorrie,* 606 F.Supp. at 371–72; *Gibson,* Slip Op. at 5–7.[5] It is not for this court to substitute its judgment for

**4.** Section 602(a)(7) provides in pertinent part:
... The state agency—
(a) shall, in determining need, take into consideration any other income and resources of any child or relative claiming Aid to Families with Dependent Children, or of any other individual (living in the same home as such child and relative) whose needs the state determines should be considered in determining the need of the child or relative claiming such aid....

**5.** This court should make clear that the foregoing conclusions are unaided by the expert testimony submitted by plaintiffs in support of their motion for summary judgment. This testi-

mony, given by a social welfare expert, may well reflect the consequences of the family filing unit amendment upon AFDC families and upon parents making child support payments. *See* Declaration of Judith Cassetty, at 10–12. Nevertheless, this expert's testimony in no way influences this court's conclusions regarding congressional intent. It may be inconceivable to plaintiffs' expert that Congress intended implementation of the regulations at issue in this litigation, but such conclusions based upon factual judgments regarding the best welfare policy can have no effect upon this court's dispassionate legal analysis of congressional intent.

the Congress' on the way families allocate funds.

### B. *Count Two.*

Count two of plaintiffs' complaint alleges that the defendants' interpretation of the family filing unit amendment results in deprivation of property without just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution. In particular, plaintiffs allege that child support recipients are deprived of their child support without just compensation when they are forced to include their child support income as income available to the AFDC family unit. *See Gilliard v. Kirk*, 633 F.Supp. at 1551–55; *Johnson*, Slip Op. at 38.[6]

■ As a preliminary matter, the court must determine whether there are property interests at stake which are protected by the fifth and fourteenth amendments. The parties do not dispute the fact that child support recipients have a property interest in child support payments. A review of Georgia state law confirms the parties' understanding that child support recipients have more than the mere unilateral expectation in child support monies; they have a property interest defined by state law. *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 161, 101 S.Ct. 446, 450–51, 66 L.Ed.2d 358 (1980) (citations omitted). Georgia's statutes impose an obligation upon biological parents to support their children during minority. O.C.G.A. §§ 19–7–2 & –24. This statutory obligation does not cease upon divorce and cannot be waived either by agreement of parents or by order of a court. *Collins v. Collins*, 172 Ga.App. 748, 749, 324 S.E.2d 475 (1984). Consequently, a court-ordered award of child support, such as that accomplished by court approval of the separation agreement between Ms. Baldwin and Mr. King, is merely an obligation imposed upon a biological parent in lieu of the statutory obli-

gation. *Thomas v. Holt*, 209 Ga. 133, 70 S.E.2d 595 (1952). In addition to mandating an enforceable right to child support on behalf of minor children, Georgia law requires that the custodial parent spend child support monies for the benefit of the child. *Id; see also Stewart v. Stewart*, 217 Ga. 509, 123 S.E.2d 547 (1962). That is, the custodial parent acts as trustee of the child support monies for the child as beneficiary. *Id.*

Having determined that child support recipients have a protected property interest, it is necessary to analyze the extent to which they suffer a diminution in the value of this property interest. Defendants argue that the amendment leaves child support recipients with essentially the same benefit because they receive not only the first $50 in child support payments which is disregarded, but also the remaining child support payments collected by the state and paid to the AFDC family unit. In other words, it is theoretically possible for the custodial parent to sequester money for the benefit of child support recipients alone so that they enjoy the same benefits which they previously enjoyed as the result of the child support payments. This argument ignores the fact that the custodial parent cannot sequester money for the exclusive benefit of the child support recipients other than the first $50 disregarded. Sequestering portions of the remaining child support payments which are collected by the state and paid to the AFDC family unit would subject the custodial parent to possible civil and criminal sanctions for violating a statute requiring that AFDC funds be spent in the best interest of all children in the family unit. *Gilliard v. Kirk*, 633 F.Supp. at 1552 (citing 42 U.S.C. § 605).

Because child support payments over and above the $50 disregarded are paid to the AFDC family unit in satisfaction of a portion of the payment standard for the fami-

---

**6.** Of course, this allegation pertains only to members of the plaintiff class who receive more than $50 per month in child support income. For example, Ms. Maffett, who has in the past received approximately $40 per month in child

support income for her daughter Melissa, would not have grounds to challenge the regulations as a taking because the first $50 of child support income is automatically disregarded. 42 U.S.C. § 602(a)(8)(A)(vi).

ly, there is undeniably a diminution in the value of the child support recipient's property interest. This is made clear by reference to the circumstances of the Baldwin family. Prior to the implementation of the amendment, Wilnetta and Lapheitta Baldwin each had a right to enjoy the benefit of $100 of the total $200 per month paid by their father in child support payments. Because the first $50 paid in child support is disregarded, these children retain a right to $25 each per month in child support payments. However, because the remaining $150 is now paid to the Baldwin family in satisfaction of the $264 payment standard for a family of four, Wilnetta and Lapheitta Baldwin can no longer demand their share of this money. Although they previously had a right to $75 apiece, they now have a right only to a pro rata share of the $264 AFDC family budget for a family of four, or a right to $66 apiece. Consequently, under the operation of the amendment, Wilnetta and Lapheitta Baldwin each contribute $75 apiece to the family unit, but receive only $66 apiece from the family unit. Despite the absence of any obligation to support their coresident siblings or their custodial parent, they are forced to part forever with $9 apiece per month, which is used to pay for the maintenance of the rest of the family unit. In short, child support recipients in the position of Wilnetta and Lapheitta Baldwin are coerced by the amendment into supporting those they have no obligation to support, and this will always be the case where the amount of income deemed is greater than the amount of government assistance paid.[7]

■ While child support recipients in the position of plaintiffs Wilnetta and Lapheitta Baldwin clearly suffer a diminution in the value of their property interest, this diminution does not automatically result in a taking without just compensation. The Supreme Court has not developed any particular formula for determining when "jus-

tice and fairness" require compensation as a result of public action diminishing the value of private property. *Penn Central Transportation Company v. New York City*, 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978). This determination usually depends upon the facts and circumstances of a particular case. *Id.* Indeed, it has been said that this determination is as much an exercise of the judgment of the court as it is a product of the application of logic. *Andrus v. Allard*, 444 U.S. 51, 65, 100 S.Ct. 318, 326–27, 62 L.Ed.2d 210 (1979).

Despite the absence of any set formulas, the "Court has been permissive in upholding governmental action that may deny the property owner of some beneficial use of his property or that may restrict the owner's full exploitation of the property, if such public action is justified as promoting the general welfare." *Webb's Fabulous Pharmacies, Inc.*, 449 U.S. at 163, 101 S.Ct. at 452 (citations omitted). Consequently, the Court has upheld bans upon the marketing of certain products where such bans substantially serve the public interest. *E.g., Andrus*, 444 U.S. at 64–68, 100 S.Ct. at 326–28 (banning the sale of bald and golden eagles). The Court has also upheld significant limitations upon improvement of private property where the limitations are in the interest of the general public. *E.g., Penn Central*, 438 U.S. at 125–29, 98 S.Ct. at 2659–62 (limitation on development of historic landmarks such as Grand Central Terminal). Such limitations have denied the property owner free choice in the use of his property. Nevertheless, as the Court noted in the *Andrus* case,

[T]he denial of one traditional property right does not always amount to a taking. At least where an owner possesses a full 'bundle' of property rights, the destruction of one 'strand' of the bundle is not a taking, because the aggregate

---

7. The foregoing analysis establishes a diminution in the value of the child support recipient's property interest without reference to the individual budget of a particular family unit. Anecdotal evidence of the expenditure of child support money exclusively on the need of a child support recipient would obviously establish a taking if the amendment operated to prevent the purchase of that exclusive benefit. *See Johnson*, Slip Op. at 10–12.

must be viewed in its entirety.... In this case, it is crucial that appellees retain the rights to possess and transport their property, and to donate or devise the [property].

*Andrus*, 444 U.S. at 65–66, 100 S.Ct. at 327. While the limitations on the use of the property are often so severe as to make any profitable use impossible, the Court has concluded that this is a risk of doing business in a civilized community. *Id.* at 67, 100 S.Ct. at 327–28.

The foregoing permissive approach to governmental regulations of the use of private property may be contrasted with those cases in which there has been an actual physical invasion of private property or complete destruction of such property. This contrast is evidenced in the case of *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982). The Court in that case was faced with a statute which required that a landlord permit a cable television company to install facilities on a landlord's property and prohibited a demand of payment from the company in excess of a fee determined to be reasonable by a state agency. The state agency ruled that a one-time one dollar payment was a reasonable fee. Noting that the installation of cable television facilities on the landlord's property amounted to a permanent, physical occupation of the property, the Court concluded that the landlord's right to possess, use and dispose of the property had been destroyed. *Id.* at 435, 102 S.Ct. at 3175–76. The right to possess the occupied space and to exclude others from that space was clearly vitiated by the statute. *Id.* Moreover, he could not control the use of the property; that is, he not only was prevented from excluding others, but also from making any non-possessory use of the property. *Id.* at 436, 102 S.Ct. at 3176. Finally, any legal right to dispose of the occupied space was emptied of any value, since a purchaser would also be unable to make any use of the property. *Id.* Under such circumstances, the Court concluded that the landlord's property had

been taken without just compensation. *Id.* at 441, 102 S.Ct. at 3179.

Defendants would have this court draw an analogy between the family filing unit amendment and those cases in which the Court has been permissive in upholding regulation of the use of private property. However, unlike the economic actors in those cases, child support recipients have not subjected themselves to the risk of regulation of the use of their child support payments. The coercive nature of the amendment makes clear that child support recipients do not voluntarily subject themselves to AFDC regulations. *Compare Gilliard v. Kirk*, 633 F.Supp. at 1551–52 *with Whitney v. Heckler*, 780 F.2d 963, 972 (11th Cir.1986) (participation by doctors in the Medicare program held voluntary).

A more significant distinction between child support recipients and voluntary economic actors who suffer some limitation on the beneficial use of private property is the actual limitation placed upon child support payments as a result of the amendment. Those child support recipients in the position of plaintiffs Wilnetta and Lapheitta Baldwin suffer more than a mere limitation on the use of child support payments. They actually suffer the dispossession of a portion of their child support which is taken from them and used to support the AFDC family unit. In the case of plaintiffs Wilnetta and Lapheitta Baldwin, there is a complete deprivation of at least $18 per month which is collected by the state and given to co-resident siblings. Because the state has collected this money for the AFDC family unit, these plaintiffs no longer have the right to possess the money themselves and the consequential power to exclude the state and its AFDC dependents from possession and use of the money. *Gilliard v. Kirk*, 633 F.Supp. at 1554. Indeed, they are forced to use their property for the benefit of others. If the takings clause means anything, it means that the government cannot force child support recipients "to bear public burdens which in all fairness should be borne by the public as a whole." *Id.* (quoting *Armstrong v.*

*United States*, 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 554 (1960)).

■ Defendants argue that even if the amendment works a taking, there is just compensation in the form of a guarantee that the child support monies will be collected. *See Seagraves v. Harris*, 629 F.2d 385, 392 (5th Cir.1980). Defendants also point to other benefits, such as eligibility for the Medicaid program, which accompany membership in the AFDC family unit. *See* 42 U.S.C. § 1396a(a)(10). Recognizing that child support recipients do receive these benefits, the court cannot conclude that these benefits amount to just compensation. Just compensation means the fair market value of the property on the date it was appropriated. *Kirby Forest Industries, Inc. v. United States*, 467 U.S. 1, 10, 104 S.Ct. 2187, 2194, 81 L.Ed.2d 1 (1984). "Under this standard, the owner is entitled to receive 'what a willing buyer would pay in cash to a willing seller' at the time of the taking." *Id.* (citations omitted). The court cannot conclude that the rather intangible guarantees which defendants postulate amount to just compensation would be equivalent to a cash payment of the amount of child support payments which child support recipients are now forced to spend upon the AFDC family unit. For example, the court cannot assume that Wilnetta and Lapheitta Baldwin would accept the status of a ward of the state in return for anything less than the payment in cash of the money which they are forced to spend on the other members of their family.

For the foregoing reasons, the court concludes that the AFDC family filing unit amendment works a taking without just compensation when applied to child support recipients in the position of plaintiffs Wilnetta and Lapheitta Baldwin. Defendants may not enforce the amendment without compensating such child support recipients in cash.

### C. *Count Three.*

■ Count three of plaintiffs' complaint alleges that defendants' interpretation of the family filing unit amendment violates the Tenth Amendment to the United States Constitution. In particular, plaintiffs contend that the amendment forces custodial parents to violate their duty under state law to use the child support payments for the support and maintenance of the designated recipients. By forcing custodial parents to breach a state-imposed duty, plaintiffs contend that the amendment violates the tenth amendment by intruding impermissibly into state family law, an area traditionally governed by state law.

The tenth amendment provides that "the powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." Pointing out that this amendment may serve at most to protect the sovereign State of Georgia in its control over family law, defendants argue that plaintiffs lack standing to assert the rights of the state. Defendants do not deny that plaintiffs have met the article III requirements of standing in that they have suffered distinct injury traceable to the challenged conduct of defendants. *See Duke Power Company v. Carolina Environmental Study Group*, 438 U.S. 59, 72, 98 S.Ct. 2620, 2630, 57 L.Ed.2d 595 (1978). Rather, defendants suggest that none of the plaintiffs is a proper party to assert a tenth amendment challenge.

Although plaintiffs have alleged injuries sufficient to meet the "case or controversy" requirement, the court agrees with defendants that a plaintiff "generally must assert his own legal rights and interest, and cannot rest his claim to relief on the legal rights or interests of third parties." *Worth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). This prudential limitation on standing is meant to avoid the adjudication of rights which the third party may not want to assert and to insure the most effective advocacy of the rights at issue. *Duke Power Company*, 438 U.S. at 80, 98 S.Ct. at 2634. These prudential considerations "serve to limit the role of the courts in resolving public disputes. Essentially, the standing ques-

tion in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Worth*, 422 U.S. at 500, 95 S.Ct. at 2206. Of course, there are circumstances where the underlying justifications for this prudential limitation are absent. For example, where the relationship of the plaintiff to the third person is such that the enjoyment of a third party's right is inextricably connected with the activity the party wishes to pursue, courts can rest assured that adjudication of a third party's rights is appropriate and not an exercise in abstract analysis. *Singleton v. Wulff*, 428 U.S. 106, 114–15, 96 S.Ct. 2868, 2874–75, 49 L.Ed.2d 826 (1976). This is particularly true where physicians are advocating the rights of their patients. *See id.*

The prudential limitations upon this court's jurisdiction argue against recognizing plaintiffs as the proper parties to assert Georgia's tenth amendment rights. It is evident that the third party not before this court, the State of Georgia, may not wish to assert its tenth amendment rights in the context of its participation in the AFDC program. Furthermore, there is an absence of the kind of special relationship identified in cases such as *Singleton v. Wulff* between the plaintiff and the third party. Indeed, the interest of plaintiffs and that of the State of Georgia may be antagonistic to the extent that Georgia, through its agent, defendant Ledbetter, has cooperated in the implementation of the challenged regulations. This is a classic case for invoking the prudential limitation against the assertion of third-party rights.

In sum, the court concludes that the plaintiffs are not proper parties to raise a tenth amendment claim.

#### D. *Count Four.*

■ Court four of plaintiffs' complaint alleges that "[i]n order to accord full faith and credit, as required by 28 U.S.C. § 1738, to the state court judgments which legally restrict child support to the use of the child on whose behalf it is paid, [the amendment] must be construed as excluding" such payments from income available to the AFDC family unit. The full faith and credit provision cited in plaintiffs' complaint does not provide a barrier to congressional action, but rather requires a recognition of a state court's judgments by every other court within the United States. The statute by its very terms is inapplicable to the enforcement of a congressional mandate by administrative agencies.

> The records and judicial proceedings of any court of any State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.
>
> Such ... records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

28 U.S.C. § 1738.

In any event, full faith and credit need not be strictly accorded where Congress has indicated a policy contrary to a particular state judgment. *See American Mannex Corp. v. Rozands*, 462 F.2d 688, 690 (5th Cir.), *cert. denied*, 409 U.S. 1040, 93 S.Ct. 524, 34 L.Ed.2d 489 (1972) (cases cited therein). In short, there is nothing inherent in the full faith and credit statute which limits congressional action taken in amending the AFDC family filing unit.

#### E. *Counts Five and Six.*

Counts five and six of plaintiffs' complaint allege deprivations of equal protection and due process guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. Plaintiffs' briefs have fleshed out the specific ways in

which the amendment violates plaintiffs' equal protection, substantive due process and procedural due process rights. The alleged violations of these various rights will be considered *seriatim.*

### 1. *Equal Protection.*

■ Plaintiffs allege a violation of their right to equal protection because the family filing unit amendment impermissibly distinguishes between child support recipients who live with siblings receiving AFDC benefits and those who do not live with siblings receiving AFDC benefits. Additionally, plaintiffs contend that the amendment results in disparate treatment between plaintiffs who receive child support and those child support recipients who are not forced to apply for AFDC benefits because of certain exclusions in the law. Plaintiffs point to the treatment of children of absent military personnel and the children of aliens who are not affected by the family filing unit amendment.

The first step in determining whether equal protection under the laws has been denied a person is a determination of whether persons who are similarly situated have been subjected to disparate treatment. *Johnson v. Smith,* 696 F.2d 1334, 1336 (11th Cir.1983). "Only when a governmental unit adopts a rule that has a special impact on less than all the persons subject to its jurisdiction does the question whether this principle [equal protection of the laws] is violated arise." *Id.* (quoting *New York City Transit Authority v. Beazer,* 440 U.S. 568, 587–88, 99 S.Ct. 1355, 1366–67, 59 L.Ed.2d 587 (1979)). In determining whether a group of persons is similarly situated with another group, this court is enjoined to look first at the purpose of the law giving rise to the alleged classifications. *Johnson,* 696 F.2d at 1336–37 (citations omitted).

With this standard in mind, it is evident that plaintiffs' equal protection claim does not even allege disparate treatment of similarly situated persons. The amendment was intended to include all co-resident siblings of AFDC recipient children who are otherwise eligible for AFDC assistance so that the AFDC family filing unit accurately reflects the income and needs of the entire economic unit. Therefore, child support recipients are similarly situated for the purposes of the amendment if they are otherwise eligible for AFDC benefits and live with siblings receiving such benefits. Child support recipients who do not live with siblings receiving AFDC benefits are not in the same situation as the class of plaintiffs receiving child support. They are not required to apply for AFDC benefits because they do not live in a household with current AFDC recipients. In short, they are not even subject to the jurisdiction of defendants.

The alleged differentiation between plaintiffs and the children of military personnel and aliens also fails to identify a similarly situated group. Children of military personnel who are absent from the home because of military duty are by definition not children deprived of parental support and thus otherwise eligible within the meaning of the challenged regulations. *See* 42 U.S.C. § 606(a)(1). Children of aliens not permanently residing in the United States are also by definition not children otherwise eligible for financial assistance. *See* 42 U.S.C. § 602(a)(33). Such children are not considered dependent children. *Id.*[8]

### 2. *Procedural Due Process.*

■ Plaintiffs also invoke the protection of procedural due process. They contend that the absence of any individualized determination that child support monies are actually available to co-resident siblings receiving AFDC benefits deprives plaintiff child support recipients of their right to a pre-deprivation hearing. *See Gorrie,* 606 F.Supp. at 373. Even if this argument had merit standing alone, it is rendered moot by

---

**8.** Congress was careful to include the caveat "except as otherwise provided in this part" when enacting the family filing unit amendment. 42 U.S.C. § 602(a)(38). This caveat must be read as leaving intact those consistent statutory provisions such as the rule regarding the children of aliens.

this court's earlier conclusion that child support recipients in the position of plaintiffs Wilnetta and Lapheitta Baldwin suffer a taking without just compensation. Because defendants may not now take child support payments without just compensation, no deprivation will occur for which a pre-deprivation hearing is necessary. That is, those plaintiffs such as Wilnetta and Lapheitta Baldwin who may be said to have suffered a deprivation of a property interest will not suffer any deprivation under this court's ruling necessitating the provision of procedural protections.[9]

### 3. *Substantive Due Process.*

Plaintiffs finally argue that the family filing unit amendment abridges their liberty interests as guaranteed by the substantive due process clauses of the fifth and fourteenth amendments. To the extent that plaintiffs rely upon the effect upon the liberty interest of child support recipients, this court agrees for the following reasons.

■ The Supreme Court "has long recognized that freedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause...." *Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 639, 94 S.Ct. 791, 796, 39 L.Ed.2d 52 (1974). Even though there is no explicit protection for such matters in the Constitution, the Court has consistently recognized that a so-called "right of privacy" is implicit in the notion of liberty. *Carey v. Population Services International,* 431 U.S. 678, 684–85, 97 S.Ct. 2010, 2015–16, 52 L.Ed.2d 675 (1977). This right of privacy establishes "a private realm of family life which the state cannot enter." *Prince v. Massachusetts,* 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944).

That the Court has been willing to find protection for the institutions of marriage and family should come as no great surprise to students of our Constitution. The ninth amendment provides: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." The language and the history of this amendment provide ample support for the proposition that the liberty protected by the substantive due process clause is not restricted to those rights specifically mentioned in the Bill of Rights. *Griswold v. Connecticut,* 381 U.S. 479, 493, 85 S.Ct. 1678, 1686, 14 L.Ed.2d 510 (1965) (Goldberg, J., concurring); *see id.* at 484, 85 S.Ct. at 1681.

While substantive due process analysis presents the spectre of jurisprudence which depends upon the personal philosophy of a particular judge, *see Moore v. City of East Cleveland,* 431 U.S. 494, 502 & n. 8, 97 S.Ct. 1932, 1937 & n. 8, 52 L.Ed.2d 531 (1977) (plurality opinion), this danger has been minimized by commitment to the traditions and collective conscience of the American people. *Griswold,* 381 U.S. at 493, 85 S.Ct. at 1686 (Goldberg, J., concurring). Thus, the Court has asked whether the right implicated "is of such a character that cannot be denied without violating those 'fundamental principles of liberty and justice which lie at the base of all our civil and political institutions'...." *Id.* (quoting *Powell v. Alabama,* 287 U.S. 45, 67, 53 S.Ct. 55, 63, 77 L.Ed. 158 (1932)).

This recourse to the traditions and conscience of the country has been responsible for the Court's willingness to recognize the aforementioned right of privacy surrounding family life. "Our decisions establish that the Constitution protects the sanctity of the family precisely because the institution of the family is deeply rooted in this Nation's history and tradition. It is

---

**9.** If this court were to address the necessity of procedural protections under the circumstances of this case, it would be the court's inclination to conclude that no individual has a right to a particularized determination that their family is extraordinary in that child support benefits are not used to meet at least a portion of common household needs. *See Bi-Metallic Investment*

*Company v. State Board of Equalization,* 239 U.S. 441, 445, 36 S.Ct. 141, 142, 60 L.Ed. 372 (1915). That is, the presumption that child support monies are used to benefit the AFDC family unit is a determination of a legislative fact rather than an adjudicative fact. *Atkins v. Parker,* 472 U.S. 115, 105 S.Ct. 2520, 2530, 86 L.Ed.2d 81 (1985).

through the family that we inculcate and pass down many of our most cherished values, moral and cultural." *Moore*, 431 U.S. at 503–04, 97 S.Ct. at 1937–38 (footnotes omitted). In particular, the Court has recognized the traditional role of parents in raising their children. "It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." *Prince*, 321 U.S. at 166, 64 S.Ct. at 442 (citation omitted); *see also Wisconsin v. Yoder*, 406 U.S. 205, 232, 92 S.Ct. 1526, 1541, 32 L.Ed.2d 15 (1972). A special solicitude for the parental role has led the Court to protect the family against various unjustified intrusions. *See, e.g., Moore*, 431 U.S. at 500–01, 97 S.Ct. at 1936–37 (right of grandparents to raise grandchildren); *Pierce v. Society of Sisters*, 268 U.S. 510, 534–35, 45 S.Ct. 571, 573–74, 69 L.Ed. 1070 (1925); *Meyer v. Nebraska*, 262 U.S. 390, 399–401, 43 S.Ct. 625, 626–27, 67 L.Ed. 1042 (1923) (both cases upholding the right of directing the upbringing and education of children).

If the role of the parent is so fundamental as to deserve special protection, then certainly the child has the right to enjoy the nurturing and guidance afforded by a parent willing to discharge his or her obligations. When a child's upbringing is directed by a parent, that child is necessarily the recipient of the parental values. The fact of parental support is perhaps as important as any value which a parent can pass along to a child. The child learns by example that offspring must be cared for and not left to the mercy of other relatives or of the state. The absence of support may well result in wholly different expectations; deprived of a role model, a child might conclude that the obligations of parenthood cease at the moment of procreation.

The interest which a child has in choosing at least whether he or she either will be a ward of the state or a valued member of a family is made painfully clear in the case of the child support recipient plaintiffs.

Although these children do not experience the traditional two-parent family, they do enjoy their status as children whose parents live up to their obligations. They enjoy the distinction of a non-custodial parent who offers not only financial support, but also moral and emotional support. Living in an otherwise economically disadvantaged household, these child support recipients gain self-esteem and dignity from being cared for by their own; they are reassured that despite their disadvantages, they are no different from the more well-heeled members of our society.

To be sure, the interest of the child in the support and nurture of his or her parent is not a liberty interest which has been explicitly recognized as protected by the due process clause. "But unless we close our eyes to the basic reasons why certain rights associated with the family have been accorded shelter under the ... Due Process Clause, we cannot avoid applying the force and rationale of these precedents to the family choice involved in this case." *Moore*, 431 U.S. at 501, 97 S.Ct. at 1936.

■ Just because the right at stake in this action is fundamental does not mean that the challenged amendment is automatically subjected to rigorous scrutiny. *Zablocki v. Redhail*, 434 U.S. 374, 386–87, 98 S.Ct. 673, 681–82, 54 L.Ed.2d 618 (1978). It must appear that the governmental regulation "directly and substantially" interferes with the rights at stake before heightened scrutiny is applied. *Lyng v. Castillo*, —— U.S. ——, 106 S.Ct. 2727, 2729, 91 L.Ed.2d 527 (1986) (citations omitted). Only when there is such an interference does the court ask whether the purpose of the governmental regulation is important or compelling and whether the government has chosen sufficiently tailored means for achieving its purpose. *Zablocki*, 434 U.S. at 388, 98 S.Ct. at 682; *Moore*, 431 U.S. at 499, 97 S.Ct. at 1935.

■ A review of the potential effects of the family filing unit amendment convinces this court that there is a direct and substantial interference with the fundamental

rights at stake. Unlike the circumstances in the case of *Lyng v. Castillo*, the child support plaintiffs in this action were not voluntary participants in a governmental welfare program prior to the implementation of the challenged regulation. Moreover, unlike the circumstances in the *Lyng v. Castillo* case, the child recipient plaintiffs have not merely been forced to rearrange an incident of family life. 106 S.Ct. at 2730 (conditioning continued participation by unrelated food stamp recipients on the preparation of meals together). Instead, these child support recipients have been coerced into being wards of the state with all the consequences that has for their relations with their non-custodial parents.

In particular, these children stand to lose the two essential attributes of parenthood which this court has identified as at stake. First, these children face the prospect of less nurturing and guidance from their non-custodial parent as a result of fewer contacts with that parent. The non-custodial parent is apt to be discouraged from continuing to play a supportive role when his or her money is being collected by the state and paid to other children. Such resentment is evidenced by the record. Maffett Aff., ¶¶ 13–20. The mere interposition of the government as paying agent may itself mean less contacts with the child.

In addition to the direct effect upon the relationship between the child and the non-custodial parent, the child support recipient stands to lose that self-esteem and dignity which accompanies being supported by one's own family. While the very youngest children may not recognize their status, children of sufficient age to appreciate the source of clothing and other personal items will know that they are not self-sufficient. They will undoubtedly lose sight of the valuable lessons which accompany the support of one's parents. Their new-found circumstances may even generate a "feeling of inferiority as to their status in the community that may affect their hearts and minds in a way unlikely ever to be undone." *Brown v. Board of Education,* 347 U.S. 483, 494, 74 S.Ct. 686, 691, 98 L.Ed. 873 (1954).

■ Although the justification for intruding into the personal choice of a child to be supported either by the state or by a parent may well be important in light of the current deficit crisis, it is clear that the AFDC family filing unit amendment was not narrowly tailored to accomplish the deficit reduction goals. Congress can still deem an incremental share of child support payments of co-resident siblings available to the AFDC family unit for the purpose of insuring that the AFDC family unit does not receive more government funds than are actually necessary for its support. The documented experience of AFDC families will provide the yardstick by which to measure that portion of child support payments received by co-resident siblings which inure to the benefit of other family members. Such a statute might deem a percentage of Wilnetta and Lapheitta Baldwin's child support income as being available to the whole family to the extent that their pro rata contribution to family expenses lessens the expenditures otherwise required to provide for the basic needs of the other family members. Under a more narrowly drawn statute, Wilnetta and Lapheitta Baldwin would retain the right to choose whether they want to be members of the AFDC family unit and whether they wish to elect voluntarily to assign their support payments in return for guarantees and other government assurances.

For the foregoing reasons, this court concludes that the AFDC family filing unit amendment abridges the substantive due process rights of the child support recipient plaintiffs. *Accord, Gilliard v. Kirk,* 633 F.Supp. at 1563.[10]

10. The foregoing analysis assumes that child support recipients will not avoid the effect of the amendment by moving out of the household they share with siblings on AFDC. Of course, if the amendment has the unintended effect of actually forcing child support recipients to live with other relatives, the court's conclusions regarding the abridgement of their substantive due process rights would remain unchanged. Forcing children to move out of the household

F. *Count Seven.*

 Plaintiffs allege finally that the amendment results in the impairment of obligation of contract in violation of Article I, Section 10, Clause 1 of the United States Constitution. Because custodial parents are obligated to spend child support monies for the benefit of the recipient children, plaintiffs claim that the challenged amendment forces the custodial parents to breach their contractual obligations. It is clear that plaintiffs represented by Ms. Baldwin have contractual obligations with regard to child support monies paid pursuant to an agreement. However, the only obligation in the case of child support payments made voluntarily is the general obligation imposed by Georgia law upon custodial parents. Consequently, the court reads count seven as applying only to those custodial parents who receive child support payments on behalf of children pursuant to agreements, court-approved or otherwise.

Having defined the contractual obligation at issue, it is evident that the amendment is not even subject to attack for the alleged infringement. The contract clause proscribes only state legislation "impairing the obligation of contracts...." U.S. Const. art. I, § 10, cl. 1. By its very definition, this clause does not operate to limit federal enactments. *Pension Benefit Guaranty Corporation v. R.A. Gray and Company,* 467 U.S. 717, 104 S.Ct. 2709, 2719 n. 9, 81 L.Ed.2d 601 (1984). Because this clause operates only to restrict state legislative enactments, it is difficult to conceive how it could operate to limit the family filing unit rule. Naturally, neither the statutory amendment nor the federal regulation fall within the prohibition of the contract clause.

Defendant Ledbetter's letter was not itself a separate legislative enactment. Rather, his letter directed to county directors of AFDC merely evidenced the implementation of federal law. In view of the fact that his letter was issued pursuant to federal authority requiring implementation of the family filing unit amendment as a condition of federal funding, the court concludes that the letter is part and parcel of a federal enactment which is immune from contract clause attack. For the foregoing reasons, the court concludes that the contract clause does not operate as a limitation upon the family filing unit amendment.

In sum, defendants' motions for summary judgment are GRANTED IN PART and DENIED IN PART. Plaintiffs' cross motion for summary judgment is GRANTED IN PART and DENIED IN PART.

### III. MOTION FOR PRELIMINARY INJUNCTION.

Although the disposition of the cross motions for summary judgment entitles plaintiffs to injunctive relief, such relief is appropriately characterized as permanent rather than preliminary relief. Plaintiff's motion for preliminary injunction is accordingly DENIED as moot.

### IV. CONCLUSION.

Defendants' motions for summary judgment are GRANTED IN PART and DENIED IN PART. Plaintiffs' motion for summary judgment is GRANTED IN PART and DENIED IN PART. Plaintiffs' motion for preliminary injunction is DENIED as moot.

Because the family filing unit amendment effects a taking without just compensation and abridges plaintiff child support recipients' substantive due process rights, plaintiffs are entitled to permanent injunctive relief. Defendants are hereby enjoined from forcing child support recipients who are coresident siblings of AFDC family members to apply for AFDC benefits and to assign their child support to the State of Georgia as a condition of their co-resident siblings' eligibility for AFDC benefits. Defendants are also enjoined from terminating or reducing the AFDC grants of AFDC family units based on child support income received by co-resident sib-

---

with the custodial parent would be an even more egregious interference with the child's lib-

erty interest. *See Gilliard v. Kirk,* 633 F.Supp. at 1558.

lings who do not choose to be members of the AFDC family filing unit. Defendants are furthermore ORDERED to inform all class members of their rights under this order by way of a notice to be included with AFDC checks delivered during the month of November and by way of notice to any families whose AFDC benefits have been terminated by the State of Georgia as a result of the family filing unit amendment.